Curtis BUMPAS, Plaintiff-Respondent-Petitioner,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant,

Advance United Expressways, Inc., and Excalibur Insurance Company, Defendants-Appellants.

Supreme Court

*No. 77–539. Argued March 5, 1980.—Decided April 1, 1980.*

(Originally reported in 85 Wis.2d 805, 271 N.W.2d 142.)
(Also reported in 290 N.W.2d 504.)

For the respondent-petitioner there were briefs by *Edward F. Neubecker, Barry F. Bruskin* and *Neubecker, Schrinsky & Bruskin* of Milwaukee, and oral argument by *Barry F. Bruskin.*

For the appellants there were briefs by *Thomas L. Smallwood* and *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee, and oral argument by *Mr. Smallwood.*

COFFEY, J. This is a review of a decision of the court of appeals reversing the judgment of the circuit court for Dane county granting the petitioner, Curtis Bumpas, worker's compensation benefits.

The respondent-petitioner, Curtis Bumpas, 44 years of age, was employed by Advance United Expressways, Inc., as a truck driver. The petitioner in his application for worker's compensation alleged that on the 28th day of January, 1974, he slipped on the ice in the company's parking lot, injuring his knee and reported the same to his employer.

A hearing was held on his application for compensation benefits before two examiners of the Wisconsin Department of Industry, Labor and Human Relations. At the hearing the petitioner testified that he slipped on the ice in the employer's parking lot getting into his car and twisted his left knee causing him to suffer immediate · and very sharp pain. He stated that he neither had incurred any pain nor difficulty with his left knee prior to the accident. He related that at the time of the alleged accident he was on his way to lunch, but failed to report the accident until after returning from lunch and then continued to complete his 8-hour shift that day. The following day he stated he took an unscheduled two-week vacation in Antigo at his parents' house in order to rest his knee. During the hearing he testified that he did not visit a doctor or seek any medical treatment for the injury until after his return from his vacation on the 15th or 16th day of February, 1974. Contrary to his testimony of not reporting to a doctor, his orthopedic surgeon, Dr. Foster, filed a WC–16–B medical report[1] containing the following entry:

---

[1] "WC–16–B report" refers to the physician's report filed with the Department of Industry, Labor and Human Relations in lieu of testifying at the administrative hearing.

"1–29–74 Initial examination and x-ray, bilateral knees"

On cross-examination the petitioner, a licensed pilot, admitted that in spite of his constant pain he was able to fly an airplane during his two-week vacation period in early February. Upon his return from his Antigo vacation, he had his left knee examined for the first time since the alleged accident.

The petitioner then called a Mr. Dennis Conlon, a co-employee, as a witness who stated that he saw Bumpas slip and was "hanging onto the [car] door" in the company parking lot during the winter of 1974, although he could not remember the exact date. He further recounted that he ". . . went over [to Bumpas] and asked if he was okay and he said he was hurt." Mr. Conlon's testimony further revealed that he had previously refused to tell the company's insurance adjuster that he saw the petitioner slip in the parking lot because: (1) he "didn't want to get involved" and (2) he believed that even if he had said that he had seen the petitioner fall in the parking lot he would not have been eligible for worker's compensation benefits.[2]

In addition to this testimony, the petitioner offered five WC–16–B medical reports into evidence, pursuant to sec. 102.17(1)(d), Stats.[3] One report was from Dr.

---

[2] The circuit court, in its memorandum decision, found that Mr. Conlon had "impeached himself by admitting he had not been truthful when interviewed by the insurance company representative" and for that reason ignored his testimony in reaching its decision.

[3] Sec. 102.17(1)(d) provides as follows:

"(d) The contents of verified medical and surgical reports, by physicians, podiatrists, surgeons and chiropractors licensed in and practicing in this state, presented by a party for compensation shall constitute prima facie evidence as to the matter contained therein, subject to such rules and limitations as the department prescribes. Verified reports of physicians, podiatrists, surgeons

Lawrence Foster, his orthopedic surgeon, who performed the initial operation on Bumpas' left knee in February of 1974. Four other reports were introduced into evidence from Dr. Robert Buss, an orthopedic surgeon and partner of Dr. Foster. Dr. Buss also performed additional surgery on the injured left knee in March of 1975. Furthermore, hospital records, relating to the surgical procedures on the left knee and likewise earlier surgical procedures performed on the right knee, were introduced into evidence.

Dr. Foster's report dated 1–12–76, almost two years after the date of the alleged accident and surgery, describes the petitioner's condition almost two years earlier as follows:

and chiropractors, wherever licensed and practicing, who have examined or treated the claimant, if such practitioner consents to subject himself or herself to cross-examination shall also constitute prima facie evidence as to the matter contained herein and verified reports by doctors of dentistry shall be admissible as evidence of the diagnosis and necessity for treatment but not of disability. Physicians, podiatrists, surgeons, dentists and chiropractors licensed in and practicing in this state may certify instead of verify such reports, and such certification shall be equivalent to verification; and any physician, podiatrist, surgeon, dentist or chiropractor who knowingly makes a false statement of fact or opinion in such certified report may be fined or imprisoned, or both, under s. 943.395. The record of a hospital or sanatorium in this state operated by any department or agency of the federal or state government or by any municipality, or of any other hospital or sanatorium in this state which is satisfactory to the department, established by certificate, affidavit or testimony of the supervising officer or other person having charge of such records, or of a physician, podiatrist or surgeon, to be such record of the patient in question, and made in the regular course of examination or treatment of such patient, shall constitute prima facie evidence in any worker's compensation proceeding as to the matter contained therein, insofar as it is otherwise competent and relevant."

"loose body left knee. Torn medial meniscus, left knee. Chondromalacia patella, left knee."

The hospital records recite that the petitioner was admitted to the hospital on February 17, 1974 and the day following Dr. Foster performed an arthrotomy[4] on the left knee. At the time of his admission to the hospital the claimant's medical history, including his present illness, was taken and it reflects Dr. Foster's diagnosis and impression as follows:

"HISTORY OF PRESENT ILLNESS:

"This 43 year old gentleman has had *increasing pain in his knee over the past several months* and at the present time has had to discontinue several of his passtimes [sic] because he is unable to utilize the left leg. When he stands on it he feels a sharp pain frequently and there will be a catching in the knee causing his knee to give out. He has x-ray evidence of what appears to be loose bodies and spurs within the left knee which is probably accounting for his problem. The patient had had surgery on his right knee in the past and has had four operative procedures, the last one two years ago and is doing quite well with the right knee. (Emphasis supplied.)

". . .

"IMPRESSION:

"Degenerative arthritis with loose bodies and possible torn meniscus, knee, left."

The second report of the patient while hospitalized, dated April 27, 1974, recited that the petitioner had experienced discomfort in the left knee "for the past several months." It is noteworthy to point out that the hospital records and reports fail to contain any reference to an accident or injury on January 28, 1974 as being the underlying cause of the pain, suffering and difficulty the petitioner was experiencing with his left knee. However, in con-

---

[4] An arthrotomy is a surgical incision of a joint. *Gould Medical Dictionary* 138 (3rd ed. 1972).

trast to the information and case history in Dr. Foster's hospital reports, the petitioner testified that he had told Dr. Foster about slipping on the ice in the company's parking lot. This evidence is further questioned upon examination of the WC–16–B medical reports of Dr. Foster and Dr. Buss, filed at the hearing, wherein they attribute the knee injury to the alleged parking lot incident in late January of 1974.

The employer, Advance United Expressways, Inc., called as their only witness an orthopedic surgeon, Dr. Elliot Coles, who stated that he examined the petitioner in October of 1975, at the request of the Advance United Expressways, Inc., and had also reviewed the available hospital and medical reports. Based on his examination and review of the records, he concluded to a "reasonable medical probability," that the condition of the petitioner's knee at the time of the initial surgery in February (the arthritic condition, chondromalacia,[5] and the loose body in the knee) were "conditions that take some time to develop" and thus were in existence prior to the date of the alleged accident as the petitioner claimed. However, he did concede that an arthritic condition can be aggravated by a fall. Dr. Coles, in his written report, stated that he was of the opinion to a "reasonable medical probability" that the petitioner did not sustain the injury to his left knee as a result of an accident on January 28, 1974:

"Whether or not the patient sustained a significant injury to his left knee on January 28, 1974 remains questionable, since the admitting history on February 17, 1974 does not describe any specific injury, and reference is made to left knee pain of several months duration."

Moreover, Dr. Coles refuted the testimony of Dr. Buss stating that the "medial instability of the left knee"

---

[5] Chondromalacia is a softening of the cartilage. *Stedman's Medical Dictionary* 271 (23rd ed. 1976).

diagnosed by Dr. Buss in February of 1975 and surgically corrected in March was not related to the alleged accident of January, 1974. He supported this medical opinion with the contents of the hospital reports of the 1974 operation which state that the "medial collateral ligament was so tight at the time of the initial operation on the left knee that . . . [it] would not even admit the tip of the little finger on valgus stress."

Following the hearing, the (DILHR) examiners concluded that they could find "no credible evidence" to establish that the petitioner's alleged knee injury had in fact occurred and as a result they dismissed the petitioner's application for worker's compensation benefits.

The department (DILHR) affirmed the hearing examiner's findings and order of dismissal. The petitioner then filed a summons and complaint in the circuit court alleging that the department "acted without or in excess of its power" in its finding that no credible evidence existed to establish that a compensable injury to the left knee occurred on January 28, 1974. The circuit court reversed the department's findings and order as follows:

"While the Court considers the question to be a very close one, it has concluded that on the basis of the holding in *Erickson* the discrepancy in the history set forth over Dr. Foster's signature at page 5 of the Elmbrook Hospital Records (App. Exh. A) is insufficient to permit the department to entertain a legitimate doubt that applicant experienced the traumatic incident which he testified took place on January 28, 1974."

and entered judgment accordingly, sustaining the respondent's claim for worker's compensation benefits. The respondent then filed an appeal with the appellate court who, upon review, reversed the judgment of the circuit court and held that the record ". . . provides ample basis for the examiner's legitimate doubt of claimant's assertions, and for the dismissal of his claim."

It is from this decision of the court of appeals that the petitioner, Curtis Bumpas, petitioned for review.

*Issue:*

Is there sufficient credible evidence to support the department's findings that the petitioner, Curtis Bumpas, did not sustain an injury to his left knee on January 28, 1974 as alleged?

This is a review of a decision of the court of appeals denying worker's compensation benefits to the petitioner, Curtis Bumpas. On appeal the petitioner contends that there is "no credible evidence to support the Department's [DILHR] finding that the Claimant [Curtis Bumpas] did not sustain an injury to his left knee on January 28, 1974" while in his employer's parking lot.

Whether the petitioner sustained an injury to his left knee while working was a question of fact for the hearing examiners and/or the department to decide. *Vasquez v. ILHR Department,* 39 Wis.2d 10, 158 N.W.2d 331 (1968). *See also:* Haferman, *Judicial Review of Workmen's Compensation Cases,* 1973 Wis. L. Rev. 576. In this case the department denied the petitioner worker's compensation benefits, finding no evidence that he had sustained an injury in a work related accident. In *Erickson v. ILHR Department,* 49 Wis.2d 114, 181 N.W.2d 495 (1970), this court held that the department has a duty to deny compensation only where the evidence raises a legitimate doubt as to the existence of facts essential to establish a claim:

". . . It is the duty of the department to deny [worker's] compensation if it finds a *legitimate doubt* exists regarding the facts necessary to establish a claim.

" ' "It is an elementary principle of law that the applicant has the burden of proof in a workmen's compensation case, and if the evidence before the Industrial

Commission is sufficient to raise in the mind of the commission a *legitimate doubt* as to the existence of facts necessary and essential to establish a claim for compensation, it becomes the duty of the commission to deny the application on the ground that the claimant did not sustain his burden of proof. *Nielsen v. Industrial Comm.* (1961), 14 Wis. (2d) 112, 109 N.W. (2d) 483; *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N.W. (2d) 93; and *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 87 N.W. (2d) 822.' " *Lewellyn v. ILHR Department* (1968), 38 Wis.2d 43, 52, 155 N.W.2d 678." (Emphasis supplied.) *Id.* at 118.

Similarly, in *Beem v. Industrial Comm.*, 244 Wis. 334, 12 N.W.2d 42 (1943) this court held:

" 'If the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation, it would be the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be.' " *Id.* at 377.

In an appeal from the department's findings, this court's right of review is limited to a determination of whether there is sufficient credible evidence in the record to support their findings. *Vasquez v. ILHR Department, supra* at 17. The evidence in support of the department's finding need not meet the increased burden of proof to that of a preponderance or the great weight of the evidence but need only be sufficient to exclude speculation or conjecture. *Kress Packing Co. v. Kottwitz,* 61 Wis. 2d 175, 178, 212 N.W.2d 97 (1973). If there is credible evidence to support the findings of the department, such findings will not be upset on appeal. *Erickson v. ILHR Department, supra* at 118; *R. T. Madden, Inc. v. ILHR Department,* 43 Wis.2d 528, 169 N.W.2d 73 (1969); *In-*

*dianhead Truck Lines v. Industrial Comm.*, 17 Wis.2d 562, 565, 117 N.W.2d 679 (1962). Therefore, the question on appeal is whether there was sufficient evidence to raise in the mind of the department a legitimate doubt regarding the petitioner's claim of injury.

This court has held that the term legitimate doubt does not refer to any doubt that the department chooses to entertain, but in order for the department to justify or entertain a legitimate doubt ". . . [t]here must be . . . some inherent inconsistency . . ." or conflict in the testimony. *Erickson v. ILHR Department, supra* at 119; *Richardson v. Indus. Comm.*, 1 Wis.2d 393, 397, 84 N.W.2d 98 (1957).

A review of the record in this case establishes a number of inconsistencies and/or conflicts in the medical history testimony and reports received in evidence dealing with the question of whether the petitioner suffered a compensable injury on the 28th day of January, 1974 on the employer's parking lot.

1. The petitioner, Curtis Bumpas, testified that he injured his left knee on the employer's premises while entering his car on his way to lunch. Thus, the petitioner claims a work related accident and he is thus entitled to worker's compensation benefits. Despite his claim that he suffered the injury at work, he, nevertheless, admitted that he failed to seek immediate medical attention, in fact, the record clearly establishes that he went to lunch and continued at work, completing his full 8-hour shift that day. Also, the petitioner testified that he did not consult a doctor or receive treatment for the knee[6]

---

[6] The petitioner claims, for the first time on appeal, that he had consulted a doctor the following day citing to Dr. Foster's WC–16–B report which showed that x-rays were taken on January 29, 1974. However, the petitioner's testimony makes no reference to such a visit but states that he saw a doctor on his return from vacation.

until after he returned from a two week vacation at his parents' home, even though he claimed that he was suffering constant pain from the injury to his knee. He further admitted that the constant pain did not interfere with his flying of a private plane during the 2-week vacation period after the alleged accident, nor did he visit a doctor during this time. This continued physical activity, when contrasted with his testimony of immediate, continuous and sharp pain, is inconsistent with his claim that he suffered a painful knee injury in the employer's parking lot on January 28, 1974.

2. The petitioner's hospital records and reports, dictated in February and March of 1974, some three weeks after the alleged accident, made no reference to the alleged job related injury accident, despite his claim that he told Dr. Foster that he had incurred the injury from a slip on the ice at the company's parking lot. Moreover, two of Dr. Foster's hospital reports (the petitioner's doctor) noted that the petitioner ". . . has had increasing pain in his left knee *over the past several months.*" The statements in the hospital records and reports thus characterize the petitioner's knee problems as a sustained, gradual increase in pain and not the result of a single recent accident, such as the petitioner claims. Furthermore, the reference in the hospital reports to an increase in pain of the left knee "over the past several months" contradicts the petitioner's testimony that prior to the alleged accident he experienced no difficulties or pain in his left knee.

3. The testimony of the employer's orthopedic surgeon, Dr. Coles, conflicts with the petitioner's testimony as to the cause of the pain and suffering. Dr. Coles stated that he doubted whether the petitioner had sustained a significant injury to the knee on January 28, 1974:

"Whether or not the patient sustained a significant injury to his left knee on January 28, 1974 remains ques-

tionable, since the admitting history on February 17, 1974 does not describe any specific injury, and reference is made to left knee pain of several months duration."

In addition, he was of the opinion that the subsequent "medial instability of the left knee," requiring a second operation, was not related to or attributable to the accident of January, 1974 but developed later. He stated that he based this medical opinion upon an examination and review of the hospital reports, including the operative reports, describing the condition of the knee at the time of his admission and immediately after the surgery.

4. The petitioner's five WC–16–B reports of Drs. Buss and Foster conflict with the hospital reports in evidence in that four of the five (WC–16–B) reports specifically attribute the petitioner's injury to a twisting of the knee resulting from a slip on the ice.[7] However, Dr. Foster's dictated and signed medical history reports reveal no reference to the alleged accident of January 28, 1974 as the cause of the petitioner's injury.

5. The only other testimony offered was that of a co-employee who testified that he was an eyewitness to the petitioner's accident in the company parking lot. His testimony was determined to be lacking credibility and of little value as (a) he was unable to remember the day or month of the accident, (b) he refused to provide the company's insurance adjuster with a signed statement of the accident, when asked, because he did not want to get involved, and (c) he testified that "I was talking to him when he slipped; apparently he slipped; I don't know. His arm, he was hanging on the door of the car. I really—I can't remember exactly what happened." and thus his testimony was inconsistent, confusing and without probative value.

---

[7] The other WC–16–B report left blank that part of the form concerning cause of the injury.

In his brief, the petitioner contends that the present case is similar to the cases of *Richardson v. Industrial Comm., supra,* and *Erickson v. ILHR Dept., supra.* In those cases this court held that there was an insufficient basis in the record for the department or commission to entertain a *legitimate doubt* as to whether the applicant was entitled to receive compensation. The petitioner argues that these cases should be followed here, however, we do not agree as we find these cases to be readily distinguishable.

In *Richardson v. Industrial Comm., supra,* the claimant's testimony was not questioned or challenged by another witness because his was the only testimony offered:

"No part of Richardson's testimony was brought into doubt by that of other witnesses; his was the only testimony in the record." *Id.* at 397.

However, in the present case there is an abundance of conflicting testimony and evidence contradicting the petitioner's testimony and thereby raising a legitimate doubt as to the authenticity of the petitioner's claim for worker's compensation benefits.

We hold the *Erickson* case is also distinguishable on its facts in that in *Erickson* the injured employee was forced to stop work immediately due to the pain and discomfort and to report to the plant hospital at once. Moreover, in the *Erickson* case the hospital records and WC–16–B reports of the three doctors all uniformly and consistently refer to the work related accident as the cause of his injury. Lastly, there was no medical testimony introduced to show that the claimant's injury was caused by anything other than the work related injury.

In contrast, the petitioner, Curtis Bumpas, did not stop work immediately after the alleged accident nor did he obtain medical assistance for his immediate, continuous

and very sharp pain, in fact, he waited more than two weeks before consulting a physician or surgeon about his injury. Secondly, the hospital reports conflict with the WC–16–B reports of Drs. Foster and Buss, as they do not refer to an accident as the cause of the petitioner's immediate, continuous and very sharp pain, but rather refer to a sustained, gradual increase in pain over the past several months due to a condition of "[d]egenerative arthritis with loose bodies and possible torn meniscus, knee, left." Finally, the medical testimony of Dr. Coles disputed whether the petitioner injured his knee on January 28th as alleged. The factual circumstances in this case are significantly different from those present in *Erickson* and *Richardson* and thus their holdings are not applicable.

In view of the above-described contradictions and inconsistencies in the testimony and evidence, we hold there was sufficient credible evidence in the record to raise a legitimate doubt in the mind of the department as to the existence of facts essential to the petitioner's right to worker's compensation benefits. We, therefore, affirm the court of appeals' decision reversing the circuit court judgment and reinstating the department's dismissal of the petitioner's claim for compensation.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded to the circuit court for proceedings consistent with this opinion.