Scott BRETL, Plaintiff-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION, City of Port Washington Police, Employers Insurance of Wausau and Employee Trust Funds, Defendants-Respondents.

Court of Appeals

*No. 95–3379. Submitted on briefs June 13, 1996.—Decided July 31, 1996.*

(Also reported in 553 N.W.2d 550.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael H. Gillick* of *Murphy, Gillick, Wicht & Prachthauser* of Milwaukee.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Stephen M. Sobota*, assistant attorney general. On behalf of the defendant-respondent, City of Port Washington Police, the cause was submitted on the brief of *James R. Korom* and *Susan M. Love* of *Von Briesen, Purtell & Roper, S.C.* On behalf of defendant-respondent, Employers Insurance of Wausau, the cause was submitted on the brief of *Peter L. Topczewski* of *Law Offices of Stilp and Cotton* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J.   Scott Bretl maintains that there is a lack of credible and substantial evidence to support the Labor and Industry Review Commission's (LIRC) conclusion that he is not suffering from post-traumatic stress disorder (PTSD) caused by his shooting an armed suspect. Upon our review of the record, we are satisfied that LIRC's conclusion is supported by relevant evidence concerning the personal stresses in Bretl's life and competent medical evidence excluding the shooting as a cause of Bretl's emotional problems. We also hold that even if the facts *had* shown that Bretl's emotional problems resulted from the shooting, we would give deference to LIRC's determination that the shooting under the facts of *this* case was not an event lying outside that which is forseeably encoun-

tered by small town police officers. We affirm LIRC's denial of benefits to Bretl.

The basic facts are not in dispute and we summarize them from LIRC's written decision. On May 1, 1990, Bretl, a ten-year veteran of the City of Port Washington Police Department, confronted a suspect outside of police headquarters. The suspect was armed with a knife and turned toward Bretl in a threatening manner, Bretl fired two warning shots into the ground and he then shot the suspect. The suspect was treated for a flesh wound and released from an area hospital. The next day Bretl was evaluated by a psychiatrist, found fit for duty and returned to work.

During the next month, Bretl experienced several personal problems including an after-hours disturbance at a tavern and the ingestion of a substance he believed to be cocaine. Shortly thereafter Bretl sought the assistance of the chief of police in dealing with his personal problems and he sought psychiatric treatment from Dr. Basil Jackson. This treatment regime included a period of hospitalization. Bretl's last day of work was May 28, 1990, which coincided with his hospitalization. In the fall of 1990, he began treatment with a psychologist, Marc Ackerman; although Ackerman concluded on November 5, 1990, that Bretl could return to work, he refused to complete a form indicating that Bretl was fit for duty and the police department did not rehire him.

Bretl filed a claim for worker's compensation under ch. 102, STATS., and duty disability benefits under § 40.65, STATS., on October 17, 1991, claiming that he was permanently disabled for police duties because of psychological injuries. Bretl asserts that the shooting of the armed suspect was an extraordinarily stressful situation that was the cause of his develop-

ment of PTSD that permanently and totally disabled him. LIRC rejected Bretl's medical experts who had concluded that he was suffering from PTSD arising from the shooting of the suspect. LIRC found the police department's expert to be more credible and accepted his conclusion that Bretl did not suffer from PTSD related to his employment as a police officer. LIRC also concluded that shooting a suspect while in the line of duty was not an unusual stress for a police officer. Bretl sought review of LIRC's decision under § 102.23(1), STATS., and the circuit court entered judgment affirming LIRC's denial of worker's compensation and duty disability benefits.

In the worker's compensation hearing Bretl had the burden of proving all elements of his claim, *Bumpas v. DILHR*, 95 Wis. 2d 334, 342, 290 N.W.2d 504, 507 (1980), and on appeal it is equally his burden to show that the decision should be overturned; LIRC is not required to justify its decision. *Racine Educ. Ass'n v. Commissioner of Ins.*, 158 Wis. 2d 175, 182, 462 N.W.2d 239, 242 (Ct. App. 1990). Bretl contends on appeal that the issue is whether shooting another human being in the course of employment as a small town police officer is an extraordinarily stressful situation under the standards established in *School Dist. No. 1 Brown Deer v. DILHR*, 62 Wis. 2d 370, 215 N.W.2d 373 (1974). In seeking reversal of LIRC's decision, he makes two separate arguments. First, he asserts that if the issue is a question of fact, LIRC's decision is not supported by credible and substantial evidence. In the alternative, he argues that if the issue is a question of law we are to apply a de novo standard of review because this is an issue of first impression.

99

■
The issue of whether shooting another human being in the course of employment as a small town police officer is an extraordinarily stressful situation and is a mixed question of fact and law. The issue asks two questions. The first question requires a determination of the conduct of the parties and is traditionally considered a question of fact. *See Nottelson v. DILHR*, 94 Wis. 2d 106, 115, 287 N.W.2d 763, 768 (1980). The second question requires the application of the legal standards to the facts and is traditionally considered a question of law. *See id.*

In answering the first question, there must be a determination of what actually happened. In other words, did the event occur, does Bretl have PTSD and was the event a cause of the PTSD? Because the answers to these questions are dependent upon LIRC being in a better position to evaluate the evidence as it is received and to judge the credibility of the witnesses, we give deference to the factual findings made by LIRC. *See* Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels,* 74 MARQ. L. REV. 231, 243 (1991).

■
LIRC's findings of fact are conclusive on appeal so long as they are supported by credible and substantial evidence. Section 102.23(6), STATS.; *Applied Plastics, Inc. v. LIRC,* 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984). Credible evidence is that which excludes speculation and conjecture. *Bumpas,* 95 Wis. 2d at 343, 290 N.W.2d at 508. Substantial evidence is not a preponderance of evidence, but relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). We do

not evaluate conflicting evidence to determine which should be accepted; we will affirm if there is credible evidence to support the finding regardless of whether there is evidence to support the opposite conclusion. *Valadzic v. Briggs & Stratton Corp.,* 92 Wis. 2d 583, 592-94, 286 N.W.2d 540, 544-45 (1979).

The credibility of witnesses and the persuasiveness of testimony are within the province of LIRC. Section 102.23(6), STATS.; *see also Goranson v. DILHR,* 94 Wis. 2d 537, 554, 289 N.W.2d 270, 278-79 (1980). Conflicts in the testimony of medical witnesses are to be resolved by LIRC, and a determination made by LIRC that the testimony of one qualified medical witness rather than another is to be believed is conclusive. *E. F. Brewer Co. v. DILHR,* 82 Wis. 2d 634, 637, 264 N.W.2d 222, 224 (1978).

Using these guidelines, we conclude that LIRC's finding that Bretl did not sustain a compensable mental injury on May 1, 1990, is supported by credible and substantial evidence. There is credible and substantial evidence to support LIRC's conclusion that Bretl was suffering from a psychiatric illness, but that it arose from major stressors in his personal life that happened before and after the shooting.

At the time of the shooting Bretl, a ten-year veteran of the police department, was working in the Ozaukee County undercover drug unit and spent many nights socializing and drinking in taverns as a part of this assignment. On April 1, 1990, Bretl had a violent confrontation with his wife after a night of heavy drinking at a family wedding. This confrontation precipitated the separation of the parties. During the month before the shooting incident, Bretl confessed to his estranged wife that he had had numerous extra-

marital affairs and was being tested for the AIDS virus; she, in turn, informed him that she was pregnant. At the hearing, his former wife testified that Bretl's conduct changed before the shooting incident and his conduct after the shooting was consistent with his earlier conduct. The police chief corroborated this testimony.

The major nonemployment-related stresses did not end on May 1, 1990. After the shooting, Bretl's personal life was marked with a bitter and protracted divorce, including a contentious custody battle. In January 1991, Bretl was involved in litigation to recover personal property. In the spring of 1991, his mother died after a lengthy illness. During this same period, Bretl was engaging in abnormal behavior, including discharging a gun at a friend's apartment, videotaping himself "mooning" while going through a car wash and incidents in two topless bars in Milwaukee.

Another substantial stress in Bretl's life was charges brought by the police department seeking to terminate him because of conduct unbecoming an officer. The charges were filed after treatment records, from Bretl's treatment with Dr. Jackson, were released to the police department and revealed possible cocaine use during the summer of 1990. The termination proceedings were conducted during the summer of 1991 and were surrounded by negative publicity. Bretl was discharged from the police department on September 5, 1991.

Rather than attacking this evidence, Bretl protests LIRC's rejection of his expert testimony from several doctors in favor of the testimony offered by the employer's medical expert, Dr. Gay Anderson. Bretl argues that LIRC abused its discretion because it rejected the opinion of five doctors that he was suffer-

ing from PTSD and the shooting was the only incident that could have caused the PTSD. He asserts that the conclusions of Anderson had no factual support and ignored the symptoms and criteria for PTSD listed in the American Psychiatric Association's DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-III-R) (revised 3d ed. 1987).

LIRC rejected the diagnosis of PTSD provided by four doctors Bretl consulted. Despite the mass of medical evidence supporting Bretl, LIRC found the testimony of Anderson, the police department's independent physician, to be extremely credible. LIRC accepted Anderson's opinions because he took into consideration the stressors in Bretl's personal life in concluding that the shooting incident was not a cause of Bretl's PTSD. LIRC also found significant the testimony of the psychiatrist who examined Bretl the day after the shooting and found that he was fit for duty and the testimony of several individuals that Bretl's attitude or behavior did not show any change after the shooting. As we have noted, one of the guiding principles in our review is that we cannot weigh the competing physicians' testimony in this matter, and we cannot substitute our own judgment of conflicting medical testimony for that of LIRC. Accordingly, we determine that LIRC's factual findings are supported by substantial and credible evidence.

LIRC alternatively held that even if the facts showed causation between the shooting and Bretl's PTSD, there still would not be compensable injury. This is because *School Dist. No. 1*, 62 Wis. 2d at 377-78, 215 N.W.2d at 377, holds as follows:

103

[T]hat mental injury non-traumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience. Only if the "fortuitous event unexpected and unforeseen" can be said to be so out of the ordinary from the countless emotional strains and differences that employees encounter daily without serious mental injury will liability under chapter 102, STATS., be found.

LIRC determined that even with Bretl's rendition of the facts, there would be no compensation since the shooting was not outside the norm for a small town police officer. Although we could stop here and decide the case simply on LIRC's first determination that the PTSD was not caused by the shooting, we decide this issue, as did LIRC, in the interest of completeness.

The second issue, the application of legal standards to the facts, is one of law. In answering this question, we usually owe no deference to the tribunal which engaged in fact finding and then applied a legal standard to those facts. We are as competent as the tribunal in assessing the legal impact of the facts. *See* Hofer, *supra*.

We depart from this tradition when reviewing the legal conclusions drawn by LIRC. We apply a sliding scale of deference that is contingent upon the level of LIRC's experience, technical competence and specialized knowledge. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992). The greatest level of deference requires that we give great weight to LIRC's legal conclusions if it is a question that it routinely resolves. *See id.* The next level of deference

provides that if LIRC's decision is very nearly one of first impression, we must give due weight to that decision. *See id.* at 291, 485 N.W.2d at 259. Finally, we owe no deference to LIRC and will conduct a de novo review if it is clear from the lack of precedent that the case is one of first impression and LIRC's special expertise and experience is no greater than ours. *See id.*

Bretl maintains that LIRC lacks the experience, technical competence and specialized knowledge to apply the legal standard for determining whether a small town police officer has suffered compensable emotional injuries. He concedes that the legal standard for compensation of emotional traumatic injuries is found in *School Dist. No. 1*, but argues that because there is no reported case of a police officer seeking worker's compensation for PTSD from a shooting incident this court is as capable as LIRC of applying the legal standard. He would ignore the more than twenty-five years of experience LIRC has gained in applying the *School Dist. No. 1* standard.

We conclude that we owe great deference to LIRC's application of *School Dist. No. 1* to the facts of this case.

> LIRC is the agency charged with determining eligibility for worker's compensation and as such has developed expertise in the area. The *School District No. 1* test has been on the books for twenty-five years and represents the standard under which the agency has been making its value judgments and applying its expertise. Such expertise is significant in determining whether a claimant has suffered compensable "mental harm or emotional stress or strain" pursuant to sec. 102.01(2)(c), Stats. [Citations omitted.]

*Probst v. LIRC*, 153 Wis. 2d 185, 191-92, 450 N.W.2d 478, 480 (Ct. App. 1989).

The standard mandates the application of an objective test. LIRC is required to determine whether the duties of the job subject the claimant to greater stress than those who are similarly situated.

> [T]he *School District No. 1* test does not contemplate consideration of the claimant's stresses and strains alone. Rather, these must be measured against the "day-to-day emotional strain and tension which all employees must experience." Only by so doing can the agency determine whether the event is "so out of the ordinary from the countless emotional strains and differences that employees encounter daily without serious mental injury." [Citations omitted.]

*Id.* at 191, 450 N.W.2d at 480.

LIRC took into consideration that Bretl was an experienced police officer and a member of the city's SWAT team. LIRC also found persuasive the police chief's testimony that such a shooting incident was not unusual for police officers. Other evidence that LIRC examined included the fact that Bretl fired warning shots and had no intent to kill the assailant. After assessing these evidentiary details, LIRC concluded that "[a]lthough clearly the shooting incident was not an everyday event and was an unfortunate incident the commission finds that the incident did not constitute unusual stress of greater dimensions than the day to day [sic] emotional strain and tensions experienced by police officers."

We have no quarrel with LIRC's legal conclusions that under the facts of this case Bretl's emotional

trauma did not meet the standards of *School Dist. No. 1.*[1]

*By the Court.*—Order affirmed.

---

[1] We add a note of caution. The ALJ decision appeared to adopt a "bright line" rule that law enforcement officers can *never* contract employment related emotional injuries from shooting a suspect. However, the objective test that was first discussed in *Probst* requires *LIRC* to individually assess each claim. It is clear that LIRC did so in this case. It is not so clear that the ALJ decision did so. We can envision a number of situations faced by a law enforcement officer that exceeds the day-to-day emotional strain all law enforcement officers experience; *e.g.*, shooting a juvenile carrying a toy gun that resembled a real weapon.