KESSLER, P.J.
¶1 Tamara Vallier appeals an order of the circuit court, affirming a decision of the Labor and Industry Review Commission (LIRC), finding that Vallier is not entitled to worker's compensation benefits. We affirm.
BACKGROUND
¶2 Vallier filed a worker's compensation claim related to a November 19, 2010 work incident. A hearing was held before an administrative law judge (ALJ). The record presented at the hearing includes the following relevant evidence.
¶3 Vallier was employed by Aurora Health Care, Inc. (Aurora) as a nurse at St. Luke's Medical Center. On November 19, 2010, at approximately 7:30 a.m., Vallier hit her right elbow and right shoulder against the corner of a wall while exiting a patient's room. Vallier described feeling a "tingling" sensation and reported the incident to Employee Health at 8:00 a.m. that same day. Vallier returned to Employee Health later that same day because the tingling had not subsided. A few days later, on November 23, 2010, Vallier called Employee Health to request a physician evaluation.
¶4 The following day, Vallier was examined by Dr. Nancy Petro at Aurora Occupational Health. Vallier complained of pain and a numbing sensation in her right arm, extending from her shoulder to her fingers. Dr. Petro noted that Vallier had no obvious signs of injury and had full range of motion in her right arm, but ordered X-rays of the right shoulder and right elbow. The X-rays "demonstrate[d] normal bone mineralization" and showed no signs of fracture or dislocation. On December 1, 2010, and again on December 7, 2010, Vallier returned to Dr. Petro with the same complaint of numbness extending down her right arm. Dr. Petro ordered an EMG (electromyography ), which indicated right lower cervical radiculopathy.[1] Dr. Tracy Park, the radiologist who conducted the EMG, noted that Vallier "described very uncomfortable tingling, accompanied by numbness, that extends from the shoulder down to the elbow." Dr. Park also noted that Vallier complained of neck pain, remarking that Vallier "presents with 18 days of symptoms in her right upper extremity."
¶5 Following the EMG results, Dr. Petro ordered an MRI (magnetic resonance imaging ) of the cervical spine. The MRI showed "a large right paracentral and right foraminal disk extrusion" at the C6-C7 level.[2]
¶6 On December 22, 2010, Vallier saw Dr. Cully White, a neurosurgeon at St. Luke's. Dr. White recommended C6-C7 total disc replacement surgery and placed Vallier on light work restrictions. Dr. White's "work release" form listed Vallier's diagnosis as "neck pain." Vallier did not want surgery. Instead, she chose to pursue conservative treatment and seek a second opinion. On January 6, 2011, Vallier sought a second opinion from another neurosurgeon, Dr. James Lloyd. Dr. Lloyd confirmed Vallier's diagnosis-a right C7 radiculopathy due to a right C6-C7 disc extrusion.
¶7 At the request of Aurora's worker's compensation insurer, Vallier was evaluated by a third neurosurgeon, Dr. Thomas Lyons, on January 24, 2011. Dr. Lyons also confirmed the C6-C7 disc extrusion, but concluded that the condition was not work-related. Dr. Lyons opined that "[t]he incident of November 19, 2010 was a mere manifestation of a pre-existing condition." Specifically, Dr. Lyons stated:
The work exposure as described by Ms. Vallier, if accurate, namely, bumping her right upper extremity and arm on a door jamb, is not the proper mechanism to be a material contributory causative factor in the onset or progression of her cervical disk herniation. There was no injury to the cervical spine ; and therefore, this was the mere appearance of symptoms consistent with her degenerative cervical disk herniation.
¶8 Vallier continued to see Dr. Lloyd. Dr. Lloyd suggested multiple courses of action, including physical therapy, pain medication, and epidural injections, but informed Vallier that she would ultimately need surgery. Dr. Lloyd recommended surgery on at least three occasions. Dr. Lloyd ultimately performed a discectomy and fusion at Vallier's C6-C7 vertebrae.[3]
¶9 On December 23, 2013, Dr. Lloyd opined that while Vallier had a pre-existing degenerative condition, Vallier's C6-C7 degeneration was precipitated, aggravated, and accelerated beyond its normal progression because of the November 19, 2010 work incident.
¶10 Vallier filed a worker's compensation claim, alleging that her cervical spine injury arose from her employment with Aurora. Aurora and its insurer denied Vallier's claim. A hearing was held before an ALJ. The ALJ found that Vallier was entitled to compensation for temporary total disability from February 21, 2011, through October 30, 2015, and "10% permanent partial disability to the whole body on a functional basis." In reaching this determination, the ALJ found Dr. Lloyd's medical reports credible. The ALJ did not find Dr. Lyons credible, noting "there is nothing in the record to indicate the applicant had neck symptomology, or right sided upper extremity pain, tingling or numbness prior to the November 19, 2010 work incident.... It was not until the ... work incident that [Vallier] had problems performing her job duties." (Some formatting altered.)
¶11 Aurora petitioned LIRC for review of the ALJ's decision. After consulting with the ALJ and reviewing Vallier's medical records, LIRC reversed the ALJ's determination. LIRC found that Vallier "suffered from pre[-]existing degenerative cervical disk disease that included a C6-C7 disk herniation, and symptoms of this personal medical condition manifested themselves coincidentally with the timing of the November 2010 work incident." LIRC also found Dr. Lyons's opinion credible, stating, "Dr. Lyons credibly opined that this incident did not present a sufficient mechanism of injury to have been directly causative of [Vallier's] C6-C7 cervical disc herniation, or of any precipitation, aggravation and acceleration beyond a normal progression of that pre[-]existing disc herniation or any other element of her pre[-]existing cervical spine condition." LIRC also found that the credibility of Vallier's treating physicians was "diminished" because Vallier failed to inform any of them that she had seen her family physician, Dr. Dexter Rebancos, for right shoulder pain in August 2010-months prior to the work incident. LIRC noted that none of the treating physicians was able to comment on the relevance of Vallier's August 2010 medical visit and found Vallier's failure to inform the physicians of that visit to be reflective of Vallier's credibility.
¶12 As relevant to this appeal, LIRC also found, erroneously, that Vallier did not complain to any of her providers of neck pain until she saw Dr. White on December 22, 2010. This finding of fact was erroneous because Dr. Park's report of December 7, 2010, indicates that Vallier was experiencing neck pain.
¶13 Vallier filed a petition for judicial review based, in part, on LIRC's erroneous factual finding. In its response to the circuit court, LIRC conceded the error, but argued that its erroneous factual finding was not material to its decision.
¶14 The circuit court affirmed LIRC's decision. The circuit court agreed that LIRC's factual error was not material to its causation decision because LIRC's decision was based on Dr. Lyons's medical opinion. The court found that LIRC's decision was supported by substantial evidence. This appeal follows.
DISCUSSION
¶15 Vallier raises multiple arguments on appeal; however, the crux of her argument is that: (1) there was no credible and substantial evidence in the record to support LIRC's determination; and (2) LIRC exceeded its authority by basing its determination on an erroneous material finding of fact. We disagree.
¶16 In an appeal from an administrative agency decision, we review the agency's decision, not the circuit court's. American Mfrs. Mut. Ins. Co. v.Hernandez , 2002 WI App 76, ¶11, 252 Wis. 2d 155, 642 N.W.2d 584. In worker's compensation cases, the claimant must prove all facts essential to the recovery of compensation beyond a legitimate doubt. Leist v. LIRC , 183 Wis. 2d 450, 457, 515 N.W.2d 268 (1994). LIRC must deny benefits if a legitimate doubt exists as to the facts necessary to establish a claim. Id.
¶17 Whether Vallier sustained an injury while performing services growing out of and incidental to her employment is an issue of fact. See Bumpas v. DILHR , 95 Wis. 2d 334, 342, 290 N.W.2d 504 (1980). "LIRC's findings of fact are conclusive on appeal so long as they are supported by credible and substantial evidence." Bretl v. LIRC , 204 Wis. 2d 93, 100, 553 N.W.2d 550 (Ct. App. 1996). "Credible evidence is that which excludes speculation and conjecture." Id. We do not weigh the evidence or pass upon the credibility of the witnesses. See American Mfrs. , 252 Wis. 2d 155, ¶11.
I. Credible and Substantial Evidence Supports LIRC's Determination
¶18 Vallier contends that LIRC's decision to deny benefits is not supported by credible and substantial evidence. We must affirm LIRC's findings if there is any credible evidence in the record to support them. See WIS. STAT. § 102.23(6) (2017-18);[4] see also R.T. Madden, Inc. v. DILHR , 43 Wis. 2d 528, 547, 169 N.W.2d 73 (1969). The credibility of witnesses and the persuasiveness of the testimony are for LIRC to determine. Goranson v. DILHR , 94 Wis. 2d 537, 556, 289 N.W.2d 270 (1980).
¶19 LIRC's decision was based on an evaluation of conflicting medical evidence. Contrary to the ALJ's findings, LIRC found Dr. Lyons's opinion credible. Dr. Lyons opined that the November 19, 2010 work incident, which involved Vallier striking a door jamb with her right shoulder and arm, did not cause or accelerate Vallier's degenerative disc herniation. Dr. Lyons found that Vallier had a pre-existing condition that simply could not have been caused or aggravated by the manner in which she struck her arm and shoulder. LIRC also noted that Vallier's other treating physicians did not have the benefit of knowing that Vallier complained of shoulder pain to her family physician months prior to the work incident, thus rendering their medical opinions incomplete.
¶20 While there is evidence supporting the ALJ's determination, "[i]t is not required that the evidence be subject to no other reasonable, equally plausible interpretations." See Hamilton v. DILHR , 94 Wis. 2d 611, 617, 288 N.W.2d 857 (1980). "[W]e cannot weigh the competing physicians' testimony in this matter, and we cannot substitute our own judgment of conflicting medical testimony for that of LIRC." See Bretl , 204 Wis. 2d at 103. Accordingly, we determine that LIRC's factual findings are supported by substantial and credible evidence.
II. LIRC Did Not Base its Decision on a Factual Error
¶21 Vallier also contends that LIRC exceeded its authority by basing its decision on its erroneous factual finding that Vallier's first report of neck pain was on December 22, 2010, to Dr. White, rather than on December 7, 2010, to Dr. Park. LIRC concedes the error, but contends that it was not material to its decision. Based on our reading of LIRC's decision, we agree.
¶22 The challenged finding was not material because LIRC's decision centered on its credibility determinations. LIRC found credible Dr. Lyons's opinion that Vallier's work incident could not have created the impact necessary to cause Vallier's cervical spine herniation. Moreover, LIRC disregarded the other medical opinions because LIRC concluded that Vallier's failure to report her August 2010 visit to her primary care doctor for right shoulder pain precluded her physicians from rendering accurate medical opinions about the cause of Vallier's cervical spine condition. Neither finding related to when Vallier first reported her neck pain. We conclude that LIRC did not exceed its authority in rendering its decision.
¶23 For the foregoing reasons, we affirm the circuit court.
By the Court .-Order affirmed.
Not recommended for publication in the official reports.

"A cervical radiculopathy is a problem that results when a nerve in the neck is irritated as it leaves the spinal canal. This condition usually occurs when a nerve root is being pinched by a herniated disc or a bone spur." See Cervical Radiculopathy : A Patient's Guide to Cervical Radiculopathy, University of Maryland Medical Center , https://www.umms.org/ummc/health-services/orthopedics/services/spine/patient-guides/cervical-radiculopathy (last visited Feb. 20, 2019).

"A right paracentral disc protrusion refers to a spinal disc that is bulging outside of its normal circumference. As the name implies, the protrusion or bulge is occurring on the right side of the patient's body. A disc protrusion involves one of the tough and pliable oval-shaped discs located between the vertebrae that has weakened and is pushing outward from its center." See What is right paracentral disc protrusion? , Laser Spine Institute , https://www.laserspineinstitute.com/back_problems/disc_protrusion/articles/right_paracentral (last visited Feb. 20, 2019).
The record uses the term "disk" and "disc" interchangeably. Unless referring to a quotation, we use the term "disc."

Vallier also saw several other doctors, including a pain management specialist, physicians at Veterans Affairs, and a psychologist. Because Vallier's claim concerns her cervical spine condition and both the findings of the ALJ and of LIRC essentially focus on the credibility of Dr. Lloyd and Dr. Lyons, we focus only on the relevant medical records.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.