COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2102**

Cir. Ct. No. **2024CV714**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

JASON K. GLOTHON,

    PLAINTIFF-APPELLANT,

  V.

LABOR AND INDUSTRY REVIEW COMMISSION, CEVA LOGISTICS U.S., INC. AND COMMERCE & INDUSTRY INSURANCE CO. C/O GALLAGHER BASSETT SERVICES INC.,

    DEFENDANTS-RESPONDENTS.

---

    APPEAL from an order of the circuit court for Waukesha County: BRAD SCHIMEL, Judge. *Affirmed.*

    Before Neubauer, P.J., Grogan, and Lazar, JJ.

    **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Jason K. Glothon appeals from a circuit court order affirming a decision of the Labor and Industry Review Commission (LIRC) concluding that he was an "independent contractor" under WIS. STAT. § 102.07(8)(b),[1] which excludes him from coverage under the worker's compensation insurance maintained by CEVA Logistics, U.S., Inc. (CEVA), for which he was performing work or services when he sustained injury.  We affirm.

## BACKGROUND

¶2    The following facts are drawn from the record made before the Administrative Law Judge (ALJ) who issued the underlying decision.  Glothon worked as an over-the-road truck driver from about 1998 to 2010.  In October 2009, Glothon signed the "CEVA Ground Agreement for Leased Equipment and Independent Contractor Services" (the agreement).  The agreement repeatedly references the signee as an "independent contractor" for CEVA to haul loads for its customer.  The agreement allowed Glothon to refuse loads offered by CEVA and allowed him to decide what days he worked.  If Glothon was going to be completely unavailable for an entire day or multiple days, the agreement required Glothon to provide 24-hour notice to CEVA.  Per the agreement, Glothon was not guaranteed work from CEVA.  The agreement allowed Glothon to provide services for other entities.  Glothon was responsible for all the costs required to maintain his vehicle and commercial driver's licenses (CDL).  He was responsible for the costs associated with any damaged cargo he hauled to CEVA customers.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶3      The agreement required Glothon to carry worker's compensation insurance or occupational accident insurance.  Per the agreement, CEVA offered to provide him with occupational accident insurance upon request; Glothon availed himself of this option.  The insurance premiums were deducted from his compensation, by CEVA, for his completed services.

¶4      During the application process, Glothon submitted a W-9 form that listed the employer identification number assigned to his business, God's Trucking.  He also submitted a completed "Owner Operator Information" form on which he indicated he would be operating under "God's Trucking."  At that time and while he worked for CEVA, he owned his own truck.

¶5      After submitting the required paperwork, Glothon began hauling loads for CEVA.  A CEVA dispatcher would relay a job's details to Glothon, including the pickup location, drop off location, and the drop off deadline.  Once a job was accepted, Glothon could use any route he wished.  CEVA determined Glothon's compensation by the number of miles between the pickup and drop off locations, which it determined using a program that determined the "most efficient" route, and which it multiplied by CEVA's mileage rate to compute compensation.  Glothon was free to refuse any assignment without repercussion.  CEVA issued "settlement" statements that documented Glothon's pay, which indicate he was paid by mileage for the job and a certain amount per mile for fuel.  The agreement includes a noncompete clause in which Glothon agreed that while he worked for CEVA, and for six months following the termination of their agreement, he would not perform services for compensation for any CEVA customer for which he performed services during the term of the agreement.

¶6 Glothon testified that CEVA had pre-determined "fuel routes" that he was required to take, and if he wanted to deviate from those routes, he said he had to call a CEVA dispatcher to explain why he was deviating. To the contrary, CEVA's representative testified that CEVA only determined the "most efficient" route to calculate pay for each job and that once a job was accepted, the driver could use any route he wanted. He also testified that drivers were never required to notify a CEVA dispatcher if they used a different route than the "most efficient" one determined by CEVA. While CEVA monitored Glothon's driving hours, the number of hours did not affect his compensation, but was only tracked to ensure he did not exceed 70 hours per week as limited by law.

¶7 In June 2010, Glothon was walking down a flight of stairs at a drop off location in Wisconsin when he slipped and fell, causing him immediate pain in his back and neck. He went to the hospital where the practitioners advised him to follow-up with his doctors in California, where Glothon resided. Once home, he sought treatment for his back and neck pain through the end of 2010, which included multiple epidural injections to his lumbar spine. The injections provided only temporary relief; an MRI scan of his lower back showed a disc profusion. He underwent surgery that did not relieve his pain, so he had a fusion procedure. He continued to suffer from pain and reduced functionality.

¶8 Glothon filed a worker's compensation application with LIRC, whereupon an ALJ presided over a hearing on November 15 and December 6, 2022. The ALJ issued a written decision in April 2023, in which the ALJ made factual findings and conclusions of law. Under the facts recounted above, the ALJ dismissed, with prejudice, Glothon's application for hearing, concluding that he met the definition of "independent contractor" under WIS. STAT. § 102.07(8)(b), and thus CEVA was not liable to pay Glothon any indemnity payments or medical

4

treatment expenses. In May 2023, Glothon sought LIRC review of the ALJ's decision. In April 2024, LIRC agreed with the ALJ, adopted the findings and conclusion in the ALJ's decision as its own, and dismissed with prejudice Glothon's application for hearing. In May 2024, Glothon sought judicial review. In September 2024, the circuit court held a hearing and issued an oral ruling. The court held that LIRC's findings as to § 102.07(8)(b)1. and 3. were supported by credible and substantial evidence and that LIRC applied the proper law to the facts. It affirmed LIRC's decision that dismissed Glothon's application with prejudice. Glothon timely appealed.

## DISCUSSION

¶9    We review LIRC's decision, not the circuit court's decision, in worker's compensation cases. *Jarrett v. LIRC*, 2000 WI App 46, ¶7, 233 Wis. 2d 174, 607 N.W.2d 326. We may set aside an order or award made by LIRC only upon determination that: LIRC acted without or in excess of its powers, the order or award was procured by fraud, or the findings of fact by LIRC do not support the order or award. WIS. STAT. § 102.23(1)(e). We may not substitute our judgment for that of the LIRC's "as to the evidence's weight or credibility." *Jarrett*, 233 Wis. 2d 174, ¶11; *see* sec. 102.23(6). Rather, we examine whether the findings of fact are supported by credible and substantial evidence. *Jarrett*, 233 Wis. 2d 174, ¶11. "Under this standard, if there is relevant, credible and probative evidence upon which a reasonable factfinder could rely to reach the conclusion, the finding must be upheld." *Id.* "Credible" evidence is evidence that is sufficient to exclude speculation or conjecture. *Bumpas v. DILHR*, 95 Wis. 2d 334, 343, 290 N.W.2d 504 (1980). "Substantial" evidence is "relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Bretl v. LIRC*, 204 Wis. 2d 93, 100, 553 N.W.2d 550 (Ct. App. 1996). "We do not evaluate conflicting evidence

5

to determine which should be accepted; we will affirm if there is credible evidence to support the finding regardless of whether there is evidence to support the opposite conclusion." *Id.* at 100-101. We review de novo LIRC's application of law to the facts it found. *Wingra Redi-Mix Inc. v. LIRC*, 2023 WI App 34, ¶42, 408 Wis. 2d 563, 993 N.W.2d 715 (Ct. App. 2023).

¶10 Under the state statute governing worker's compensation, the exclusive test to determine whether an individual is an independent contractor, rather than an employee, is controlled by WIS. STAT. § 102.07(8)(b). *Jarrett*, 233 Wis. 2d 174, ¶1. "An independent contractor is not an employee of an employer for whom the independent contractor performs work or services if the independent contractor meets all of [nine] conditions." Sec. 102.07(8)(b). Glothon disputes that he meets two of the nine conditions:[2]

> 1. Maintains a separate business with his or her own office, equipment, materials and other facilities.
>
> ….
>
> 3. Operates under contracts to perform specific services or work for specific amounts of money and under which the independent contractor controls the means of performing the services or work.

Sec. 102.07(8)(b)1., 3.

¶11 We conclude that LIRC did not err when it concluded that Glothan was an independent contractor because he maintained a separate business and he controlled the means of performing the services for CEVA.

---

[2] "Because [Glothon] does not address the other seven conditions, he tacitly concedes they were satisfied." *See Jarrett v. LIRC*, 2000 WI App 46, ¶18, 233 Wis. 2d 174, 607 N.W.2d 326. We do not address them further.

## I. Whether Glothon maintained a separate business

¶12 We first examine whether Glothon maintained a separate business. Glothon owned the truck he drove to haul loads for CEVA, was responsible for its maintenance, kept his own business records, and had his own federal tax employer identification number for his business. *See Jarrett*, 233 Wis. 2d 174, ¶19. We conclude that LIRC's finding that WIS. STAT. § 102.07(8)(b)1. was satisfied rests on substantial and credible evidence.

¶13 Glothon argues for a different conclusion based on what is conflicting evidence, the assertion of which ignores our standard of review in this case, or based on what could be characterized as immaterial facts as they are not considerations contemplated by the statute in determining "independent contractor" status. He claims he did not maintain a separate business while working for CEVA. He offers these facts as support: he was unemployed prior to working for CEVA; he did not work for any other company while working for CEVA; he was not interested in maintaining his own separate business and as such did not have an office, office equipment, business stationery, a business phone, or employees; and "it was C[EVA]'s responsibility to obtain [w]orker's [c]ompensation insurance coverage for [him] … ." Our standard of review is clear: we do not substitute our judgment for that of LIRC, and as long as substantial and credible evidence supports LIRC's findings, we uphold its finding, as we do here: we conclude that substantial and credible evidence supports LIRC's finding that Glothon maintained his own business.

¶14 Glothon argues that he did not have an "office," as referenced by the statute. His argument that by not having an office he does not meet the criteria in WIS. STAT. § 102.07(8)(b)1. fails because the *Jarrett* court found this irrelevant.

7

*See* 233 Wis. 2d 174, ¶19. Having (or not having) an office is not dispositive because, as explained by LIRC, the "nature of over-the-road trucking" does not require a traditional "brick-and-mortar" office, "[r]ather, a semi-tractor is the only facility/office a truck driver needs to perform his/her duties as an over-the road hauler[.]" Glothon asserts that we should reinterpret § 102.07(8)(b)1. based on ***Amazon Logistics, Inc. v. LIRC***, 2023 WI App 26, 407 Wis. 2d 807, 992 N.W.2d 168, but that case interprets WIS. STAT. § 108.02(12)(bm), which provides its own independent contractor test to apply in the arena of unemployment compensation, which is constructed differently from the test in § 102.07(8)(b), and which is thus inapplicable to Glothon's claim under worker's compensation.

¶15 Glothon argues that ***Jarrett***, 233 Wis. 2d 174, is not controlling in this case, and that LIRC's decision in ***Tucker***, 1999-057774, 2001 WL 355483 (LIRC March 2, 2001), controls. He is incorrect, because ***Tucker*** is an administrative decision, and "[d]ecisions by state administrative agencies have never been considered to be binding precedent." ***Wingra Redi-Mix***, 408 Wis. 2d 563, ¶42 n.6. "An agency's interpretation and application of a statute is not 'settled' unless and until it has been incorporated into a published decision of an appellate court." ***Id.*** Accordingly, Glothon has failed to overcome the credible evidence upon which LIRC based its decision that he had an office sufficient for the question of independent contracting.

**II. Whether Glothon controlled the means of performing the services or work for CEVA**

¶16     We next examine whether Glothon controlled the means of performing the services or work for CEVA under WIS. STAT. § 102.07(8)(b)3.[3] Glothon claims these facts to support his claim that he did not control the means of performing the services he provided for CEVA: he had to carry identification that he was a CEVA-licensed motor carrier; he had to mark his truck with a CEVA decal; he had to call the CEVA dispatcher to get permission to deviate from the "predetermined" route; he got details of each job from the CEVA dispatcher; he had to provide 24-hours advance notice if he refused to accept a job; CEVA tracked his work hours; if needed, CEVA paid additional workers hired to unload the trailer; and CEVA placed a noncompete clause in the agreement.

¶17     We conclude that these facts do not mitigate substantial and credible evidence supporting LIRC's finding that this element was satisfied: Glothon could choose the routes he traveled when transporting loads to CEVA customers; Glothon could refuse loads offered by CEVA; Glothon decided what days he worked; Glothon's having to carry identification and place a decal on his truck does not make him an "employee"; CEVA tracked Glothon's hours for safety purposes under federal regulations and not for compensation; and the agreement's noncompete clause did not interfere with Glothon's ability to operate and provide services to CEVA under their agreement and under his control to determine the means of performing those services.

---

[3] Glothon did not contest that he operated under contracts to perform specific services or work for specific amounts of money.

¶18 Because LIRC's finding that Glothon met all nine elements of WIS. STAT. § 102.07(8)(b) is supported by credible and substantial evidence, we affirm LIRC's decision that Glothon is an independent contractor under the Act. Accordingly, we affirm the circuit court's order.

**III. Whether Glothon can successfully assert equitable estoppel against CEVA**

¶19 As his final argument, Glothon argues that CEVA is equitably estopped from denying him worker's compensation insurance coverage. The circuit court dispensed of this claim, stating that the argument does not answer whether Glothon was an employee or independent contractor. The court stated:

> This question about how … the worker[']s compensation coverage or in this case an occupational accident policy containing worker[']s compensation coverage, how that coverage is obtained or what the nature of that coverage is doesn't change the … nature of him as an employee or independent contractor. He opted to take advantage of C[EVA] providing the insurance and they took it out of his pay. It was ultimately his responsibility. He just took advantage of their offer to make that available to him. LIRC correctly concluded that that factor was not relevant to the determination as to whether he is an employee or independent contractor because … ultimately that becomes a contract claim against the policy holder or the insurance carrier, whatever the case, if they are not following through with what … Glothon believed he was paying for. That is a contract claim that doesn't change whether he was an employee or an independent contractor and that is the only question that LIRC needed to determine.

¶20 Our analysis yields the same conclusion. At the outset, the briefs do address our standard of review on this issue. "We do not decide the proper standard of review, because, even if we apply a de novo standard, we conclude [Glothon] has not established equitable estoppel." *See **Kamps v. DOR***, 2003 WI App 106, ¶21, 264 Wis. 2d 794, 663 N.W.2d 306. "The doctrine of equitable

estoppel can apply to insurance coverage." ***Mercado v. Mitchell***, 83 Wis. 2d 17, 26, 264 N.W.2d 532 (1978). "The elements of equitable estoppel are: (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." ***Milas v. Labor Ass'n of Wis., Inc.***, 214 Wis. 2d 1, 11-12, 571 N.W.2d 656 (1997).

¶21 Glothon's claim fails because he mischaracterizes the facts. He says that CEVA was to facilitate his obtaining an occupational disability policy containing worker's compensation insurance coverage. However, the agreement provided Glothon with options to satisfy his insurance obligations, and the relevant portion is the following:

> If (a) Contractor is the sole owner and the sole and exclusive operator of the Equipment and (b) the state in which the work is principally localized is not Colorado, Nevada, New Jersey, New York, or North Carolina, then Contractor may, as an alternative to obtaining workers' compensation coverage, obtain occupational accident insurance policy that includes either an endorsement or a separate policy provision whereby the insurer provides, or agrees to provide, workers' compensation coverage that becomes effective for a claim by Contractor alleging employee status. Such occupational accident insurance coverage shall be no less comprehensive than the coverage CEVA GROUND will facilitate on Contractor's behalf if Contractor so chooses … .

¶22 Glothon elected this option to obtain occupational accident insurance through CEVA. CEVA did not promise him worker's compensation insurance coverage, but rather, the terms of the agreement provided that the occupational accident insurance policy was to "include[] either an endorsement or a separate policy provision whereby the insurer provides, or agrees to provide, workers' compensation coverage that becomes effective for a claim by Contractor alleging

11

employee status." Whether Glothon is covered by such worker's compensation insurance relies on his successful assertion that he is an employee, which he did not successfully assert. Because there was no action or non-action by CEVA by which Glothon could reasonably rely on to his detriment, his claim for equitable estoppel fails.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.