LANGE, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR
& HUMAN RELATIONS and others, Respondents.

*No. 32. Argued October 29, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 645.)

For the appellant there was a brief by *Frederick F. Hillyer* of Madison and *Harry D. Clarke* of Stoughton, and oral argument by *Mr. Hillyer*.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

For the respondents Sealtest Foods Division of National Dairy Products Corporation and Aetna Insurance Company there was a brief by *Charles W. Sturm* and *William C. Sturm*, both of Milwaukee, and oral argument by *William C. Sturm*.

For the respondents Sealtest Foods Division of National Dairy Products Corporation and Ideal Mutual Insurance Company there was a brief by *Stafford, Rosenbaum, Rieser & Hansen* and *Ralph Wm. Bushnell*, all of Madison, and oral argument by *Mr. Bushnell*.

ROBERT W. HANSEN, J. The plaintiff was injured in an accident on June 13, 1965. He fell while leading a horse hitched to a wagon. The horse bolted, knocked him down and pulled the wagon over him. The horse belonged to him. The wagon belonged to Sealtest. The department's findings of fact, supported by credible evidence, established the following sequence of events leading up to the accident.

One Maurice Short was a member of the committee promoting Green County Dairy Day at Belleville, Wisconsin. He was a milk distributor, electrician and school bus driver living in Belleville. He was a distributor of Sealtest products and, with respect to Sealtest, no more than an independent contractor. He was free to buy or not to buy Sealtest products. He used his own equipment, worked his own hours and did his own billing. Sealtest shipped products to him and billed him weekly.

Short went to Sealtest to arrange for the loan of an antique milk wagon to be used in the Dairy Day parade. The wagon was on occasion loaned by Sealtest to customers without charge for use in parades. The name "Sealtest" was printed on the sides of the wagon. (Short put a cardboard sign setting forth his name and address and the fact that he was a distributor of Sealtest products on the back of the wagon.)

Short spoke to one Mr. Knueppel, salesman and contact man for Sealtest, about the use of the wagon. Knueppel asked Short whether there were horses available to pull the wagon. Short replied that he thought there were. Knueppel delivered the wagon to Short several days before the parade. (No charge was made for the wagon's use.) William Wise, sales manager for Sealtest, knew that Short was going to use the wagon and that Short had no horses of his own.

Short contacted the plaintiff three or four weeks before the accident to ask whether the plaintiff would be willing to pull the wagon in the parade with one of his horses. Plaintiff was a dairy farmer who kept three ponies and a horse as a hobby. On occasion his horse and ponies appeared in parades. Sometimes he charged for the use of his animals. Sometimes he did not.

Plaintiff agreed to furnish the horse for the wagon in the parade and agreed to a trial run before the parade. Short testified nothing was said about his paying plaintiff. Plaintiff testified that Short told him an adjust-

ment would be made on an electrical bill owed by plaintiff to Short.

On June 13, 1965, Short hauled the wagon to the plaintiff's farm for the trial run or rehearsal. Plaintiff harnessed the horse; and plaintiff, Short and plaintiff's hired man hooked up the horse to the wagon. Plaintiff testified that he objected to the kind of tie-backs (leather straps intended to keep the wagon from running into the horse on a downgrade or when the horse slows down) that were on the wagon. Short objected to cutting the tie-backs off the wagon because it was not his wagon and suggested that plaintiff test them by leading the horse and wagon around the farmyard. Plaintiff did so. He recalls falling down, stumbling or stepping into a hole. The horse bolted and the wagon ran over him, inflicting serious injuries.

Plaintiff contends that he must be found to be an employee of Sealtest under sec. 102.07 (4), Stats.,[1] or, in the alternative, sec. 102.07 (8).[2] To establish liability

---

[1] Sec. 102.07 (4), Stats., provides: "Every person in the service of another under any contract of hire, express or implied, all helpers and assistants of employes, whether paid by the employer or employe, if employed with the knowledge, actual or constructive, of the employer, including minors (who shall have the same power of contracting as adult employes), but not including (a) domestic servants, (b) any person whose employment is not in the course of a trade, business, profession or occupation of his employer, unless as to any of said classes, such employer has elected to include them. Item (b) shall not operate to exclude an employe whose employment is in the course of any trade, business, profession or occupation of his employer, however casual, unusual, desultory or isolated any such trade, business, profession or occupation may be."

[2] Sec. 102.07 (8), Stats., provides: "Every independent contractor who does not maintain a separate business and who does not hold himself out to and render service to the public, provided he is not himself an employer subject to this chapter or has not complied with the conditions of subsection (2) of section 102.28, shall for the purpose of this chapter be an employe of any employer under this chapter for whom he is performing service in

under either statute, the plaintiff must have been performing at the time of the accident a service for Sealtest instead of or in addition to performing a service for Short. That is the first threshold to be crossed. It is a person "in the service of another" under sec. 102.07 (4) and "for whom he is performing service" under sec. 102.07 (8) that is referred to. If all that Sealtest did was to loan a wagon to a customer, then there is no connection between Sealtest and the hitching up of the horse and testing of the rig. Consequently, Sealtest bears no responsibility for it.

Does the fact that Sealtest derived some benefit from the Sealtest name appearing in the parade supply this missing link? Under the modern concept of institutional advertising, almost any exposure of the brand name of a product has some value. However, standing alone, the fact of such accompanying benefit cannot create the relationship of employer and employee.[3] The fact that Sealtest knew and must have known that it derived some benefit from the appearance of its wagon in the Belleville parade is not enough, standing alone, to transform a loan of a wagon into an entering into a joint enterprise with an independent contractor who wanted to be represented in the parade.

Under sec. 102.07 (4), Stats., a "contract of hire, express or implied" must be found to exist as a prerequisite to the establishment of an employment relationship.[4] Plaintiff contends that the conversation between Short and Knueppel, the latter representing Sealtest, is something more than an agreement to let Short use the wagon in the parade. If an authorization by Sealtest to hire

---

the course of the trade, business, profession or occupation of such employer at the time of the injury."

[3] *Rice Lake Golf Club, Inc. v. Industrial Comm.* (1934), 215 Wis. 284, 287, 254 N. W. 530.

[4] *See Enderby v. Industrial Comm.* (1960), 12 Wis. 2d 91, 106 N. W. 2d 315.

the horse and driver can be here located, that would be enough to establish an employment. There need not be direct communication between prospective employer and prospective employee to establish the employment relationship.[5] But some authorization, express or implied, is needed to establish a subsequent contract of hire. Here all that happened was that Knueppel, the Sealtest representative, asked Short whether there were horses available to pull the wagon. Short replied "We'd have to ask." How much of a superstructure can be erected on this foundation? Can there be read into this casual answer to a casual question a grant of authority on behalf of the wagon loaner to hire a horse or horse and driver? Even if we were to interpret the word "we" as implying some commitment by Sealtest, even though the inclusive pronoun was used by the borrower, not the lender, could we say that this was the only reasonable inference and find unreasonable the finding of examiner, department and circuit court that no such commitment was given and no such authority granted. On this record we would have to say that we could not so hold.

Plaintiff contends that he was not a volunteer. If his testimony that Short promised to "make it right with him" by giving him a credit on an electrical bill owed to Short as electrician is believed, he was not a volunteer. But that does not make him an employee, much less an employee of Sealtest.

Plaintiff's counsel contends that Sealtest had the right to control details of plaintiff's work. We find little support for such contention in this record, but do not reach the question. The cases cited by plaintiff relating to the question of right to control details of employment [6]

---

[5] *Johnson v. Wisconsin Lumber & Supply Co.* (1931), 203 Wis. 304, 234 N. W. 506.

[6] *See, e.g., Prentice v. ILHR Department* (1968), 38 Wis. 2d 219, 156 N. W. 2d 482; *Ace Refrigeration & Heating Co. v. Industrial Comm.* (1966), 32 Wis. 2d 311, 145 N. W. 2d 777; *St.*

assume some type of contractual relationship between the parties involved, express or implied, as the frame of reference in which right of control becomes a material factor to be evaluated. This basic underpinning for a claim of liability under sec. 102.07 (4), Stats., is not present here. At the least, we conclude that there is credible evidence which, if believed, establishes that plaintiff was not an employee of Sealtest under sec. 102.07 (4).

As to the claim of liability under sec. 102.07 (8), Stats., while the phrase ". . . for whom he is performing service . . ." may be somewhat broader than the phrase ". . . in the service of another under any contract of hire, express or implied, . . ." something more than an incidental benefit to the claimed employer must be found to link the asserted employer and asserted employee. Here the plaintiff dealt only with Short and by his own testimony, looked to Short alone for compensation, which was to take the form of an adjustment on a bill owed to Short, in no way involving Sealtest. Whether plaintiff qualifies as an employee of Short is, of course, not before us to consider or decide.

There is dispute in the testimony given at the hearing as to whether plaintiff in making horses available for parade showings maintained a separate business and held himself out to render services to the public. This court has held that to qualify as an employee under the statutes, the applicant must prove that he does not maintain a separate business and does not hold himself out to the public as engaged in such business.[7] It must be conceded that plaintiff's work or activity in furnishing horses for parade is minimal in nature. However, it must be found that plaintiff's principal business was that of

_Mary's Congregation v. Industrial Comm._ (1953), 265 Wis. 525, 62 N. W. 2d 19.

[7] _Ace Refrigeration & Heating Co. v. Industrial Comm., supra,_ footnote 6.

farming and that, at the least, in furnishing horses for parade purposes he has served a variety of individuals doing the same work or performing the same service for each and all of them. However, performing services for more than one person does not necessarily spell a holding out for business.[8] While there may well be credible evidence which, if believed, would establish plaintiff as maintaining a separate business and holding himself out and rendering service to the public as an independent contractor, we do not base our ruling on this ground. Our basic and controlling finding is that plaintiff has not established that he was either "in the service of" Sealtest according to sec. 102.07 (4), Stats., or "performing service" for Sealtest according to sec. 102.07 (8) when he was injured while carrying out his agreement with Short. It is not a matter of the connecting link between plaintiff and Sealtest being weak. It is that it is not there at all.

Because the injuries are disabling and the consequences of the accident so serious, it is obvious that the examiner, the department and the circuit judge must have reluctantly reached the conclusion that plaintiff cannot be an employee of Sealtest under either sec. 102.07 (4) or sec. 102.07 (8), Stats. We confess to an equal reluctance, but the application of the law of the state to the facts of this case permits no other interpretation or ruling.

*By the Court.*—Judgment affirmed.

---

[8] *Valentine v. Industrial Comm.* (1944), 246 Wis. 297, 16 N. W. 2d 804.