EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 148.  Argued October 4, 1971.—Decided November 2, 1971*
(Also reported in 190 N. W. 2d 907.)

516

For the appellants there was a brief by *Hart, Wight-man & Thurow* and *Walter D. Thurow,* all of Madison, and oral argument by *Walter D. Thurow.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. Two issues have been presented:

1. Was the claimant Bernard Hendrix an employee of Starline Trucking Corporation at the time of his injury?

2. Did the injury occur while Hendrix was performing services growing out of and incidental to his employment?

It is the position of Starline and its insurance carrier that Hendrix was not an employee within the meaning of the Workmen's Compensation Act at the time of the injury.

Sec. 102.07, Stats., of the Workmen's Compensation Act defines employee.

Sec. 102.07 (4), Stats., is a general definition of employee and is as follows:

"Every person in the service of another under any contract of hire, express or implied, all helpers and assistants of employes, whether paid by the employer or employe, if employed with the knowledge, actual or constructive, of the employer, including minors (who shall have the same power of contracting as adult employes), but not including (a) domestic servants, (b) any person whose employment is not in the course of a trade, business, profession or occupation of his employer, unless as to any of said classes, such employer has elected to include them. Item (b) shall not operate to exclude an employe whose employment is in the course of any trade, business, profession or occupation of his employer, however casual, unusual, desultory or isolated any such trade, business, profession or occupation may be."

Sec. 102.07 (8), Stats., was enacted in 1939, several years after the enactment of the original act. It describes independent contractors who are to be classified as employees. This subsection provides as follows:

"Every independent contractor who does not maintain a separate business and who does not hold himself out to and render service to the public, provided he is not himself an employer subject to this chapter or has not complied with the conditions of subsection (2) of section 102.28, shall for the purpose of this chapter be an employe of any employer under this chapter for whom he is performing service in the course of the trade, business, profession or occupation of such employer at the time of the injury."

The ILHR Department in its brief in this court takes the position that evidence in the record supports the finding that Hendrix was an employee of Starline under both subs. (4) and (8) of sec. 102.07, Stats.

While we do not dispute the proposition that Hendrix could be an employee for workmen's compensation purposes under either subsection, we do not believe it is necessary to make this determination in this case because

we are of the opinion that Hendrix was a so-called "statutory employee" under sec. 102.07 (8), Stats.[1]

As we read sec. 102.07 (8), Stats., three qualifications must appear before an independent contractor can be classified as an employee for workmen's compensation purposes—(1) he "does not maintain a separate business," (2) he "does not hold himself out to and render service to the public," and (3) "he is not himself an employer subject to this chapter."

The evidence here reveals that Hendrix had worked under lease agreements for Starline and no one else for the past six years. This fact satisfies the requirement he did not maintain a separate business. There is no evidence that Hendrix held himself out to render service to the public. Again the fact that he worked only for Starline for the past six years is quite conclusive. There is no evidence that Hendrix ever employed more than one person, and then only a temporary substitute driver. He was not therefore subject to the Workmen's Compensation Act as an employer.

We conclude that Hendrix was a statutory employee, as defined by sec. 102.07 (8), Stats., at the time of his injury.

The second issue is whether Hendrix was performing services growing out of and incidental to his employment at the time of injury and whether the accident causing injury arose out of the employment. There are two statutory requirements which an injured person must fulfill in order to qualify for workmen's compensation. Sec. 102.03 (1), Stats., provides:

---

[1] If we were to determine whether Hendrix was an independent contractor or a common-law employee because the evidence did not include all of the requirements of a statutory employee, we would apply the tests as they are set forth in *Ace Refrigeration & Heating Co. v. Industrial Comm.* (1966), 32 Wis. 2d 311, 315, 145 N. W. 2d 777; and *Prentice v. ILHR Department* (1968), 38 Wis. 2d 219, 222, 223, 156 N. W. 2d 482.

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:

". . .

"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe going to and from his employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; . . .

". . .

"(e) Where the accident or disease causing injury arises out of his employment."

It is clear that the department's determination that Hendrix was performing service for Starline when the employment-connected injury took place will be vacated only if no credible evidence exists to support that conclusion. *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73. It is also clear that the phrase "growing out of and incidental to his employment" as used in sec. 102.03 (1) (c) 1, Stats., is broader than the common-law "scope of employment." *Butler v. Industrial Comm.* (1953), 265 Wis. 380, 61 N. W. 2d 490.

This court has held on many occasions that "performing service growing out of and incidental to his employment" includes activity that is reasonably required by the terms and conditions of his employment. *Kimberly-Clark Co. v. Industrial Comm.* (1925), 187 Wis. 53, 203 N. W. 737 (award affirmed which was granted to an employee making a tool box for his personal tools) ; *Frint Motor Car Co. v. Industrial Comm.* (1919), 168 Wis. 436, 170 N. W. 285 (affirmed award given for the death of a racing car mechanic who disobeyed employer and went to help employer's stalled car) ; *Anderson v. Industrial Comm.* (1947), 250 Wis. 330, 27 N. W. 2d 499 (affirmed award where a lad, hired for another job, attempted to grease the gears of a rock crusher without orders to do

so. He had been subsequently injured by the crusher);
*Fels v. Industrial Comm.* (1955), 269 Wis. 294, 69 N. W.
2d 225. In *Fels,* an employee damaged his own truck
which was used to haul gravel for his employer. The em-
ployee took the truck into a garage for repairs. The
employee was injured while attempting to remove the
spring on his truck. This court stated at pages 297, 298:

"This court has often said that the Workmen's Com-
pensation Law must be liberally construed to include all
service that can be reasonably said to come within it.
[Cases cited.] . . .
" 'The testing and repairing of machinery used in pro-
moting the business of an employer is a service that is
within the scope of the employment, regardless of the
question whether the machine belongs to the employer or
is merely used by it to transact its business.' "

In this case, Hendrix was required to maintain his
truck (Sec. 4 of the Lease Agreement) as a condition of
his employment. He was also required to keep the truck
in Starline's parking lot. He was in the process of fixing
a worn battery cable in his truck when he went to obtain
a rubber hose to insulate the cable. He fell because of a
slippery or icy driveway surface a few feet from his
truck. It was a benefit to Starline to have the trucks in
good repair and good running order at all times to re-
spond to Starline's needs. It was Hendrix's duty to check
his vehicle and keep it in good operating condition.

The finding that Hendrix's injury occurred while he
was performing services growing out of and incidental
to his employment is amply supported by the evidence and
must be affirmed.

*By the Court.*—Judgment affirmed.