John E. JARRETT, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Co-Appellant,

B & D MOTORS, INC. and Regent Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 99–1413. Submitted on briefs November 24, 1999.—Decided January 25, 2000.*

2000 WI App 46

(Also reported in 607 N.W.2d 326.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Walter D. Thurow* and *Jennifer M. Collingon* of *Thurow Law Offices* of Madison. On behalf of defendant-co-appellant, there were briefs by *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James T. Runyon* of *Runyon Law Offices* of Tomahawk.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The Labor and Industry Review Commission appeals a judgment of the circuit court holding that LIRC misapplied the law by not initially determining whether John Jarrett was a common law independent contractor and remanding for

177

further proceedings.[1] LIRC contends that the circuit court misconstrued WIS. STAT. § 102.07(8)(b) (1993–94)[2] by holding that the initial determination whether a person is an independent contractor in worker's compensation matters is initially determined under the common law, and only then, if applicable, under the criteria in subsec. (8)(b).[3] LIRC claims that the legislature intended to supplant the common law and that subsec. (8)(b) is the exclusive test for determining independent contractor status under the Worker's Compensation Act. LIRC further asserts that the record supports the commission's finding that all subsec. (8)(b) criteria were satisfied. We agree and therefore reverse the judgment.

## BACKGROUND

¶ 2.    On December 15, 1994, while driving a semi-truck, Jarrett was rear-ended by another semi and sustained injuries to his back and shoulder. At the time of the accident, Jarrett was working under contract for B & D, a trucking firm. His worker's compensation claim against B & D gave rise to this appeal.

¶ 3.    Jarrett began his relationship with B & D in 1992 under a lease agreement. At that time, he owned his truck and contracted to be paid 75% of the gross receipts on the routes he drove. Jarrett paid his own fuel, maintenance, road repair costs and other

----

[1] B & D Motors and its insurer also appeal the judgment. Because the arguments of all the appellants are essentially the same, we refer to the appellants collectively as LIRC.

[2] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

[3] WISCONSIN STAT. § 102.07(8)(b) provides nine conditions that must be met before a worker is considered an independent contractor. The section is set forth in full below.

expenses. He had his own federal tax identification number. Jarrett made the truck repairs he was able to do himself, and he kept his records at home. Although B & D controlled where Jarrett would pick up his load, Jarrett generally decided which routes he would take. Jarrett had the right to turn down a load. He also carried his own worker's compensation policy, but excluded himself from its coverage.

¶ 4. In June 1993, Jarrett executed an "Independent Contractor Contract" with B & D. The contract provided he "shall be and remain an independent contractor." It further provided that Jarrett "has and at all times shall retain the management of the Equipment for the duration of this Contract and shall have the exclusive right to control and direct the methods and means of performing Contractor's obligations under this Contract." Jarrett was also responsible for his various costs of doing business, including taxes, worker's compensation insurance, and the costs and expenses incident to performing the contract.

¶ 5. In 1993, Jarrett purchased a new semi-truck tractor and put the title in B & D's name. Jarrett did so to prevent the Internal Revenue Service from filing a lien upon the truck for taxes Jarrett owed. B & D made installment payments for the tractor, but deducted the payments from Jarrett's checks until it was paid for and then transferred the title to him. Jarrett continued to be responsible for the maintenance, repairs and other upkeep on the truck. If B & D serviced or repaired the truck, Jarrett was billed for the work. He generally kept the truck at his house.

¶ 6. After his accident, Jarrett applied for worker's compensation benefits from B & D. LIRC determined that the nine criteria of WIS. STAT. § 102.07(8)(b) constituted the sole test for independent

179

contractor status under the Act and that because Jarrett met those criteria he was an independent contractor and not entitled to benefits. Jarrett appealed to the circuit court, which reversed and remanded for further findings. LIRC appeals the circuit court's judgment.

## STANDARD OF REVIEW

¶ 7. On appeal, we review LIRC's decision, not the circuit court's. *See Margoles v. LIRC*, 221 Wis. 2d 260, 264, 585 N.W.2d 596 (Ct. App. 1998). We examine two issues. Initially, we address the test to be applied when determining independent contractor status under the Act. This concerns the meaning of WIS. STAT. § 102.07(8)(b), a question of statutory interpretation. The second issue involves the application of the correct legal standard to the facts. The two issues have different standards of review.

¶ 8. The ultimate goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *See Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). We first look to the statute's language. *See Cary v. City of Madison*, 203 Wis. 2d 261, 264, 551 N.W.2d 596 (Ct. App. 1996). Sections of statutes should not be read in a vacuum, but must be read together in order to best determine the statute's plain meaning. *See In re J.L.W.*, 143 Wis. 2d 126, 130, 420 N.W.2d 398 (Ct. App. 1988). If a statute is clear on its face, our inquiry ends, for we are prohibited from looking beyond the unambiguous language the legislature used. *See In re Peter B.*, 184 Wis. 2d 57, 71, 516 N.W.2d 746 (Ct. App. 1994). However, if the language is ambiguous, we may look to the statute's history, scope, context, subject matter and object to discern legislative

intent. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 163, 558 N.W.2d 100 (1997). Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995).

¶ 9.   Whether LIRC properly interpreted the statute is a question of law, and we are not bound by the commission's interpretation. *See id.* at 659. However, we give varying degrees of deference to an agency's interpretation, depending on the circumstances. *See id.* at 659–60. Our supreme court has identified three distinct levels of deference granted agency decisions: great weight deference, due weight deference and de novo review. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). Which level is appropriate "depends on the comparative institutional capabilities and qualifications of the court and the administrative agency." *Id.* (citation omitted).

¶ 10.   The parties differ over the appropriate level of deference we should accord LIRC's interpretation. LIRC contends that it is entitled to great weight deference, while Jarrett claims it is entitled to no deference. We need not decide, however, which level of deference is appropriate here because under either, we are satisfied that LIRC's interpretation is consistent with the legislature's intent, as evidenced by the legislative history of WIS. STAT. § 102.07(8)(b).

¶ 11.   After determining the applicable law, we review de novo LIRC's application of that law to the facts found. *See Local No. 695 v. LIRC*, 154 Wis. 2d 75, 82, 452 N.W.2d 368 (1990). In so doing, however, we may not substitute our judgment for that of LIRC as to

the evidence's weight or credibility. *See* WIS. STAT. § 102.23(6). Instead, we examine whether the findings of fact are supported by substantial and credible evidence, and if they are, we may not set them aside. *See* WIS. STAT. § 102.23(6); *Princess House v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169 (1983). Under this standard, if there is relevant, credible and probative evidence upon which a reasonable factfinder could rely to reach the conclusion, the finding must be upheld. *See Princess House*, 111 Wis. 2d at 54. The burden is less than the preponderance of the evidence in that any reasonable view of the evidence is sufficient. *See id.* at 52–53.

## ANALYSIS

1. The test for independent contractor.

¶ 12.   LIRC contends that the proper analysis for determining whether an individual is an independent contractor under the Act is to apply the statutory criteria in WIS. STAT. § 102.07(8)(b). Under its analysis, if the statutory requirements are met, the inquiry ends. In response, Jarrett argues that LIRC must first consider the common law criteria for determining whether a worker is an independent contractor or an employee. Jarrett reasons that LIRC applies the statutory criteria only if it first concludes that he is an independent contractor under the common law analysis. We conclude that both arguments present reasonable interpretations, and therefore the statutes are ambiguous.[4]

---

[4] WISCONSIN STAT. § 102.07(4) includes in the definition of "employe:" "Every person in the service of another under any contract of hire," among others.

¶ 13.   WISCONSIN STAT. § 102.07(8) provides:

"Employe" as used in this chapter means:

(8)(a)   Except as provided in par. (b), *every independent contractor is*, for the purpose of this chapter, *an employe* of any employer under this chapter for whom he or she is performing service in the course of the trade, business, profession or occupation of such employer at the time of the injury.

(b)   *An independent contractor is not an employe* of an employer for whom the independent contractor performs work or services if the independent contractor meets all of the following conditions:

1.   Maintains a separate business with his or her own office, equipment, materials and other facilities.

2.   Holds or has applied for a federal employer identification number with the federal internal revenue service or has filed business or self-employment income tax returns with the federal internal revenue service based on that work or service in the previous year.

3.   Operates under contracts to perform specific services or work for specific amounts of money and under which the independent contractor controls the means of performing the services or work.

4.   Incurs the main expenses related to the service or work that he or she performs under contract.

5.   Is responsible for the satisfactory completion of work or services that he or she contracts to perform and is liable for a failure to complete the work or service.

6.   Receives compensation for work or service performed under a contract on a commission or per job or competitive bid basis and not on any other basis.

7. May realize a profit or suffer a loss under contracts to perform work or service.

8. Has continuing or recurring business liabilities or obligations.

9. The success or failure of the independent contractor's business depends on the relationship of business receipts to expenditures. (Emphasis added.)

¶ 14. On its face, the statute appears to contemplate two different types of independent contractors, those who meet the requirements of subsec. (8)(b), and those who do not. Jarrett's approach is a reasonable attempt to effectuate the statute's apparent meaning.

¶ 15. LIRC argues that WIS. STAT. § 102.07, defining "employe" under the Act, must be read as a whole. Subsection (4) contains a general, broad definition of the term. Subsection (8)(b), however, specifically excludes from the definition of "employe" those workers who satisfy its nine conditions. LIRC reasons that, under the rules of statutory construction, where a general statute conflicts with a specific statute, the specific statute prevails.[5] Therefore, for purposes of the Act, workers who meet all the criteria under § 102.07(8)(b) are deemed independent contractors who are not eligible for worker's compensation benefits. LIRC's interpretation is also reasonable.

¶ 16. A statute's ability to support more than one reasonable interpretation is the hallmark of ambiguity. *See Harnischfeger*, 196 Wis. 2d at 662. Because the statute is ambiguous, we examine the legislative history of WIS. STAT. § 102.07(8). *See Lake City*, 207 Wis. 2d at 163.

---

[5] *See, e.g., City of Muskego v. Godec*, 167 Wis. 2d 536, 546, 482 N.W.2d 79 (1992).

¶ 17.  WISCONSIN STAT. § 102.07(8)(b) was created by 1989 Wis. Act 64 § 17 and replaced the previous criteria for determining independent contractor status under the Act.[6] The legislative history to § 17 indicates that a special study commission on independent contractors proposed and the Worker's Compensation Advisory Council recommended the subsection's language. A document entitled "Plain Language Analysis of Independent Contractor Recommendation" contained in the legislative file for Wis. Act 64 stated:

> There has been confusion relative to worker's compensation coverage for independent contractors. The special study commission attempted by this redefinition to eliminate the confusion and misunderstanding for independent contractors, employers, insurance companies and insurance agents. . . . Therefore, this proposed amendment would *clarify and redefine* the term independent contractor so that employers and their insurance companies will be able to identify which employees are covered by the Worker's Compensation Act. (Emphasis added.)

The legislative history thus discloses that WIS. STAT. § 102.07(8)(b) was intended to provide the sole test for determining whether a worker is an independent con-

---

[6] WISCONSIN STAT. § 102.07(8)(a) (1987–88) provided:

Every independent contractor who does not maintain a separate business and who does not hold himself out to and render service to the public, provided he is not himself an employer subject to this chapter or has not complied with the conditions of subsection (2) of section 102.28, shall for the purpose of this chapter be an employe .
. . .

tractor under the Act.[7] The new definition it establishes clarifies the term "independent contractor" and thereby eliminates the confusion and misunderstanding the common law test caused. Thus the legislature intended § 102.07 to create two classes of persons, employees and independent contractors, and to provide the method for determining whether a person is an independent contractor. We conclude that LIRC appropriately interpreted the statute because it furthers the legislative intent. Jarrett's interpretation not only conflicts with the legislative intent, but relies on cases decided prior to the modification of WIS. STAT. § 102.07(8) and does not address the current language of that subsection.

2.   Was Jarrett an independent contractor under the Act?

¶ 18.   We now consider whether Jarrett met WIS. STAT. § 102.07(8)(b)'s nine criteria. LIRC contends that the record supports its determination that all conditions of para. (b) were satisfied. Jarrett responds that

---

[7] The nine standards in subsec. (b) are also consistent to a large extent with the factors historically used in an analysis of whether one is an independent contractor. Our supreme court recognized that:

> [T]he principal or primary test for determining if an employer-employee relationship exists is whether the alleged employer has a right to control the details of the work. We have also pointed out there are subsidiary and secondary tests which should also be considered, among which are: (1) The direct evidence of the exercise of the right to control; (2) the method of payment of compensation; (3) the furnishing of equipment or tools for the performance of the work; and (4) the right to fire, or terminate the relationship.

*Ace Refrig. & Heating Co. v. Industrial Comm'n*, 32 Wis. 2d 311, 315, 145 N.W.2d 777 (1966).

he was not an independent contractor under para (b) because he did not meet two of its nine conditions, "namely he did not operate his own business and did not control the means and method of performing the work." Because Jarrett does not address the other seven conditions, he tacitly concedes they were satisfied. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (failure to refute the grounds of a ruling, especially where those grounds are asserted by opponent, results in confession of the existence of those grounds).

¶ 19.   We first examine whether Jarrett maintained a separate business. Jarrett claims "[t]here is simply no evidence that [he] maintained his own separate business . . . ." We disagree. Regardless of the inferences we might draw, substantial and credible evidence supports LIRC's finding that this element was satisfied. Jarrett supplied his own truck and was responsible for its maintenance and upkeep. He was paid, pursuant to contract, 75% of the gross receipts for the freight he hauled and he paid for his expenses on the road. Jarrett's records and truck were kept at his home. He paid for his truck and its repairs. He also had his own federal tax identification number and worker's compensation policy.

¶ 20.   Jarrett points to conflicting evidence, such as that he worked exclusively for B & D and had no formal office.[8] His argument fails to address our stan-

---

[8] Historically, Wisconsin courts that have examined the question of a separate business entity have given considerable weight to the exclusivity of the person's employment. *See Employers Mut. Liab. Ins. Co. v. DILHR,* 52 Wis. 2d 515, 520, 190 N.W.2d 907 (1971); *Ace Refrigeration,* 32 Wis. 2d at 319–20. Those cases, however, interpreted the earlier version of WIS.

dard of review. We do not sift and weigh the evidence but, rather, examine the record for substantial and credible evidence to support LIRC's findings. *See* WIS. STAT. § 102.23(6). Because such evidence existed, we must uphold LIRC's finding that Jarrett maintained his own business.

¶ 21.   Finally, we consider Jarrett's means and methods of performing the work. Jarrett again advances several facts which may conflict with this criterion but do not diminish the evidence that supports LIRC's finding. B & D concedes that it arranged where Jarrett would pick up and deliver certain loads. Jarrett, however, supplied and maintained the truck. The details of the work, including choosing a route, were left to Jarrett.[9] He also had the right to turn down a load. The evidence supporting the finding that Jarrett controlled the means and methods of performing his work is substantial and credible.

¶ 22.   In conclusion, we hold that the nine criteria of WIS. STAT. § 102.07(8)(b) supplant the common law and provide the sole test to determine independent contractor status under the Act. Section 102.07(8), which defines employees, contemplates two fundamental classifications: employees who are covered by the Act and independent contractors who are not. Because LIR C's finding that Jarrett met all nine elements of § 102.07(8)(b) is supported by credible and substantial

STAT. § 102.07(8) that contained a factor not present here: whether the worker held himself out to and rendered service to the public.

[9] The contract, the "best possible evidence" of a worker's right of control, *see* 3 ARTHUR LARSON, LARSON'S WORKER'S COMPENSATION LAW § 61.05 at 61–7 (1999), made clear that the details of the work were largely left to Jarrett.

evidence, we affirm LIRC's decision that Jarrett is an independent contractor under the Act. Accordingly, the circuit court's judgment is reversed.

*By the Court.*—Judgment reversed.