**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 23, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP490**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV4407

IN COURT OF APPEALS
DISTRICT I

SK MANAGEMENT, LLC,

PLAINTIFF-APPELLANT,

V.

DONALD L. KING, BRIAN L. SCHWEINERT, D/B/A MR. PHIXITALL, LABOR AND INDUSTRY REVIEW COMMISSION AND WISCONSIN WORKER'S COMPENSATION UNINSURED EMPLOYERS FUND,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: KEVIN E. MARTENS, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

¶1 WHITE, J. SK Management, LLC (SK Management) appeals the circuit court order affirming the decision by the Labor and Industry Review Commission (LIRC) to hold it liable for worker's compensation benefits for

Donald L. King. SK Management argues that it was not King's employer and instead King was employed by an independent contractor, Brian L. Schweinert, d/b/a Mr. Phixitall. We conclude that LIRC correctly decided that Schweinert was not an independent contractor and that King was statutorily an employee of SK Management. Accordingly, we affirm.

## BACKGROUND

¶2 The following facts are drawn from the record made before the Administrative Law Judge (ALJ) who issued the underlying decision. King was working on a demolition project at a property managed by SK Management and owned by its related entity Investco LLC (Investco), which is not involved in this action. King fell off a ladder onto the ground on May 13, 2016, and sustained injuries to his wrists and right elbow and shoulder, eventually requiring rotator cuff surgery on his right shoulder, surgery to put a plate in his right elbow, and physical therapy. King informed Schweinert that he was injured and going to the hospital. Schweinert informed Tim Olson, who managed operations at SK Management and was Schweinert's primary contact with the business. Olson approached King and asked him to sign a document releasing Investco for all claims for damages and expenses King suffered as a result of his injury. Olson offered King $300 for the release; however, King refused.

¶3 In July 2016, King filed a claim for worker's compensation benefits with the Wisconsin Worker's Compensation Uninsured Workers Fund (the Fund). He named SK Management as his employer. Schweinert did not have worker's compensation insurance. The Fund found that King's claim was compensable and

paid King worker's compensation benefits pursuant to WIS. STAT. § 102.81 (2019-20).[1] The Fund then demanded reimbursement from SK Management. SK Management filed a "reverse" application for relief, contending there was not an employer-employee relationship between it and King at the time of King's injury.

¶4 Hearings on SK Management's reverse application were conducted by the ALJ on February 26, 2018, and October 8, 2018.[2] The ALJ issued a written decision in September 2019, dismissing SK Management's action. The ALJ found that SK Management is a property management business owned by Shirley Knoposki and managed by Olson, her nephew. In 2012 or 2013, Olson began hiring Schweinert, and his sole proprietorship, Mr. Phixitall, to do work such as demolition, maintenance, snowplowing, and lawn mowing at various properties managed by SK Management.[3] Schweinert asked Olson if he could bring in helpers including King, and "Olson responded that he did not care."

¶5 The ALJ found that Olson generally relayed what jobs needed to be done through Schweinert; however, occasionally Olson would "appear at jobsites and direct the workers himself." "Olson acknowledged that he was aware that King was present at a jobsite and that he had talked with him about the work being performed." Although Schweinert brought some of his own tools to the jobsites,

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The ALJ who conducted the hearings passed away before a decision was issued. A second ALJ was assigned to the case and issued a written decision based upon the record and briefs, without an objection from any of the parties. For ease of reading, we refer to either ALJ as the ALJ.

[3] As discussed below, LIRC limited its analysis of the issue of whether Schweinert was an independent contractor or an employee of SK Management by considering only the demolition portion of Schweinert's business and King's job activities.

SK Management supplied "equipment including dumpsters, garbage bags, painter's uniforms, dust masks, safety glasses, and gloves. King himself brought no tools to the jobsite."

¶6      The ALJ also found that although some early jobs were performed on a bid basis, after 2015, SK Management paid Schweinert and all of the workers procured by Schweinert on an hourly rate set by Olson. Olson also approved any merit hourly wage increases after consultation with Schweinert, and if Olson was dissatisfied with a worker's performance, he would tell Schweinert not to bring the worker back and Schweinert would comply. In the event that a "job was not performed to Olson's satisfaction, Schweinert would return to the job site and finish the job, charging Olson for the additional time he spent correcting or finishing the work."

¶7      Further, the ALJ found that SK Management issued one check to Schweinert, encompassing all of the hours worked by Schweinert and the other workers. Schweinert cashed the check and distributed the pay appropriately. Schweinert retained $1 per hour from the other workers' pay to cover supplies and certain tools on the jobsite. SK Management issued to Schweinert an IRS form 1099, but the amount reported to the IRS did not reflect all monies paid to Schweinert—the total amount included the other workers' wages.

¶8      Regarding Schweinert's sole proprietorship, Mr. Phixitall, the ALJ found that the business had a federal employer identification number. While Mr. Phixitall had business cards and a Facebook page, it did not have office space or its own phone. "Schweinert and Mr. Phixitall did not carry business liability or worker's compensation insurance."

4

¶9    The ALJ concluded that King was an employee of SK Management within the meaning of WIS. STAT. § 102.07(4) after applying the test in ***Kress Packing Co. v Kottwitz***, 61 Wis. 2d 175, 182, 212 N.W.2d 97 (1973), *superseded by statute as stated in* ***Acuity Mut. Ins. Co. v. Olivas***, 2007 WI 12, ¶87, 298 Wis. 2d 640, 726 N.W.2d 258.[4]  The ALJ found that SK Management, through Olson, determined what work would be done on what properties, and although Schweinert generally supervised at Olson's direction, Olson also directly interacted with the employees.  Olson had the right to fire or terminate workers he found unsatisfactory.  Olson set the pay rate and approved any pay raises.  Further, SK Management provided most of the equipment used at the jobsites.

¶10    Additionally, the ALJ determined that Schweinert did not satisfy the nine required conditions to be an independent contractor under WIS. STAT. § 102.07(8)(b).  Therefore, Schweinert was an employee of SK Management and he was precluded from being King's employer.  The ALJ found that "King meets the statutory definition of an 'employee' either as a person directly in the service of SK Management under a contract of hire, or as a helper of Schweinert who himself was an employee of SK Management under WIS. STAT. § 102.04(8)(a)."  The ALJ concluded that SK Management was liable for any compensation to which King was entitled under WIS. STAT. ch. 102, as a result of his alleged May 13, 2016 injury.

---

[4]  In ***Acuity Mutual Insurance Company v. Olivas***, 2007 WI 12, ¶87, 298 Wis. 2d 640, 672, 726 N.W.2d 258, the Wisconsin Supreme Court noted that the "***Kress Packing*** test has been supplanted by WIS. STAT. § 102.08(b) for deciding independent contractor status for purposes" of the Worker's Compensation Act.  However, it stated "that the ***Kress Packing*** test continues to have vitality in determining whether a person is an employee under WIS. STAT. § 102.07(4)(a)." ***Olivas***, 298 Wis. 2d 640, ¶87.

¶11    SK Management appealed the ALJ's decision.  LIRC affirmed the ALJ decision subject to modifications including that

> Schweinert was personally under contract of hire for the performance of demolition services for SK Management. As such, and in accordance with s. 102.07(5)(d), Schweinert could not be the employer of King with respect to those same demolition services.  King was statutorily prescribed to be an employee of SK Management, the entity for whom the demolition services were being performed.

On appeal, SK Management argued that Schweinert was an independent contractor in accordance with WIS. STAT. § 102.07(8)(b), and that he was King's employer on the date of injury.  Second, SK Management contended that even if Schweinert was not an independent contractor, he was King's employer.  LIRC rejected both arguments.

¶12    LIRC reviewed each of the statutory conditions under WIS. STAT. § 102.07(8)(b):

> 1. *Maintains a separate business with his or her own office, equipment, materials and other facilities* …. While it may be argued that Schweinert had no established office, the type of handyman business he operated did not require any office, beyond his truck and his telephone.  He possessed tools and other equipment for use in the sole proprietorship.  The commission found that this condition for independent contractor status was satisfied.
>
> 2. *Holds or has applied for a federal employer identification number* .... It is conceded that Schweinert had a FEIN.  This condition was satisfied.
>
> 3. *Operates under contracts to perform specific services or work for specific amounts of money and under which the independent contractor controls the means of performing the services or work.*  It could be argued that Schweinert operated under a verbal contract with Tim Olson/SK to perform specific services for specific amounts.  However, while Schweinert routinely directed the demolition workers in the daily performance of their duties, he did not "control

the means of performing the services or work." Tim Olson/SK directed what work was to be done, and retained ultimate control over how the work was to be done. This condition was not satisfied.

4. *Incurs the main expenses related to the service or work that he or she performs under contract.* The main expenses related to the demolition work were clearly the wages paid to the individuals who performed the services. SK paid these wages, even though one of Schweinert's employment duties was to disburse SK's cash payments. This condition was not satisfied.

5. *Is responsible for the satisfactory completion of work or services that he or she contracts to perform and is liable for a failure to complete the work or service.* Schweinert shared responsibility with Tim Olson for satisfactory completion of the work, although Olson was primarily responsible. Schweinert was not liable for failure to complete the work. Both he and Olson agreed in testimony that if Olson decided something needed completion or reworking, he would pay Schweinert and the other workers their hourly wage to have that work done. Schweinert was required to do his job, just as any employee is, but he was not responsible in any business sense for failed or incomplete work. This condition was not satisfied.

6. *Receives compensation for work or service performed under a contract on a commission or per job or competitive bid basis and not on any other basis.* As of 2016, Schweinert was performing his demolition services on an hourly wage basis. SK points out that Schweinert performed his lawn mowing and snow plowing services for SK on a flat fee (per job) basis. However, Schweinert assisted in the hiring of King for the purpose of King performing demolition services for SK. It was not shown that King had anything to do with Schweinert's lawn mowing or snow plowing services, which were performed by Schweinert on an independent basis, unrelated to his demolition employment with SK. King was hired only with Olson's approval, and all the demolition services whether performed by King or by Schweinert, were paid on an hourly basis. The last clause of the condition, "and not on any other basis," plainly excludes Schweinert because he was paid on another basis (hourly) for his demolition employment. This condition was not satisfied.

7. *May realize a profit or suffer a loss under contracts to perform work or service.* SK argues Schweinert could suffer a loss if his snow plow needed replacing or his truck

broke down. Again, Schweinert's snowplowing services were performed independently from the demolition services in question. Schweinert was paid hourly for those services, and he could not "suffer a loss" when being paid on an hourly basis. This condition was not satisfied.

8. *Has continuing or recurring business liabilities or obligations.* In conjunction with the demolition work Schweinert performed for SK, he had no business liabilities or obligations. He had only "hands on" and supervisory employment duties. This condition was not satisfied.

9. *The success or failure of the independent contractor's business depends on the relationship of business receipts to expenditures.* Schweinert was paid hourly for the demolition work. His sole proprietorship business, Mr. Phixitall, did not depend upon business receipts and expenditures related to his demolition employment. This condition was not satisfied.

LIRC concluded that while Schweinert satisfied the first two conditions, he did not satisfy the remaining seven; therefore, he was not an independent contractor under the Worker's Compensation Act.

¶13 As for SK Management's second argument, LIRC concluded that King was not Schweinert's employee when he was performing demolition services under the ***Kress Packing*** test to determine an employer-employee relationship, which primarily considers the right to control the details of the work performed. LIRC concluded that Olson and SK Management had the primary right to control King's labor.

¶14 SK Management then sought judicial review of LIRC's decision under WIS. STAT. § 102.23, by filing a complaint in July 2020. The circuit court issued a written decision in February 2021 based on briefing submitted by the parties. The circuit court affirmed LIRC's decision concluding that Schweinert was not an independent contractor under the Worker's Compensation Act and that Schweinert was not King's employer because Schweinert was SK Management's

employee when he performed demolition work. A person working as an employee under the Act is not an employer of any other person. *See* WIS. STAT. § 102.04(2).

¶15 SK Management appeals. The Fund, LIRC, and Schweinert respond.

## DISCUSSION

¶16 On appeal, SK Management renews the arguments it made before the ALJ, LIRC, and the circuit court. It is undisputed that SK Management is an employer within the meaning of WIS. STAT. § 102.04(1)(b); however, SK Management insists it is not the employer of Schweinert or King. SK Management argues that King was not an employee of SK Management because King was an employee of Schweinert and Schweinert was an independent contractor. Second, it asserts that King and SK Management did not have an employer-employee relationship under the *Kress Packing* test. It contends that Schweinert, not SK Management, was King's employer.

¶17 "In a worker's compensation appeal, we review [LIRC's] factual findings and legal conclusions, not those of the circuit court." *Acuity Ins. Co. v. Whittingham*, 2007 WI App 210, ¶8, 305 Wis. 2d 613, 740 N.W.2d 154. The reviewing court "shall not substitute its judgment for that of [LIRC] as to the weight or credibility of the evidence on any finding of fact." WIS. STAT. § 102.23(6). This court will sustain LIRC's findings of fact unless they are "not supported by credible and substantial evidence." *Id.* Whether LIRC properly interpreted the worker's compensation statutes at issue is a question of law that we review independently and "we are not bound by [LIRC's] interpretation." *Jarrett v. LIRC*, 2000 WI App 46, ¶¶9, 11, 233 Wis. 2d 174, 607 N.W.2d 326.

I.    *Independent contractor*

¶18    As a threshold matter, SK Management argues LIRC erred when it confined its analysis to Schweinert's demolition activities and did not consider Schweinert's "Mr. Phixitall" work that also included handyman jobs, snow removal, and automotive work. In its decision, LIRC explained that it considered the demolition work separately from other Mr. Phixitall jobs because the record reflected that King had nothing to do with Schweinert's other activities and he was hired with Olson's approval for the demolition work. Our review of the record supports that LIRC relied upon substantial evidence that Schweinert's other work was independent and unrelated to the demolition work for which he engaged King. Therefore, we will not disturb LIRC's finding that the demolition work should be considered separately. *See* WIS. STAT. § 102.23(6); *Jarrett*, 233 Wis. 2d 174, ¶11.

¶19    WISCONSIN STAT. § 102.07 provides the exclusive method to determine whether a person is classified as an employee or an independent contractor under the Worker's Compensation Act. *See Jarrett*, 233 Wis. 2d 174, ¶17. Paragraph 102.07(8)(b) sets forth the nine conditions, which all must be satisfied in order for a person to be classified as an independent contractor and not an employee. SK Management contends that Schweinert satisfies the nine conditions. LIRC concluded that Schweinert only satisfied two of the nine conditions. Our examination of the record supports LIRC's position.

¶20    LIRC determined that the first and second conditions were met. The third condition requires the worker to operate under contracts to perform specific services or work both for specific amounts of money and under which the independent contractor controls the means of performing the services or the work. LIRC's analysis that Schweinert and the other workers performing demolition

work were all paid hourly at rates set by SK Management is supported by substantial and credible evidence. Even if the work took longer than the estimated time provided or even when SK Management was unhappy with work performed, SK Management always paid Schweinert his hourly wage. Further, SK Management controlled the means of performing the demolition services at their property. This condition was not satisfied.

¶21 The fourth condition requires that the worker incurs the main expenses related to the work performed under the contract. LIRC's analysis that the condition was not met is supported by substantial and credible evidence because SK Management was the entity that paid the main expenses for the demolition work, specifically the wages to the individual workers who performed the work. SK Management did not pay Schweinert a set amount based on a bid that would then be distributed to the workers. It paid Schweinert an amount that was based solely on the specific hours that the workers worked. Schweinert never incurred any wage expenses. This condition was not satisfied.

¶22 The fifth condition requires that the worker be responsible for the satisfactory completion of the work contracted to be performed and is liable for the failure to complete the work or the service. LIRC's analysis that Schweinert did not meet this condition is supported by substantial and credible evidence. Olson could call back Schweinert and the other workers if he wanted work re-done, and the record shows that even if Olson required work to be re-done, Schweinert was still paid his hourly wages for the time spent re-doing work. Therefore, Schweinert suffered no adverse consequences whether the work was completed satisfactorily the first time; in fact, he was paid additional sums to make the work satisfactory. This condition was not satisfied.

¶23     The sixth condition requires the worker receives compensation for work or service performed under a contract on a commission or per job, or competitive bid basis, and not any other basis. LIRC's analysis that Schweinert did not meet this condition because he was paid on an hourly basis, rather than commission, per job, or competitive bid, is supported by substantial and credible evidence. SK Management contends that the totality of Mr. Phixitall's activities showed that Schweinert performed snow plowing and lawn mowing on a per job basis. However, SK Management's argument fails because this condition requires all compensation to be made "under a contract on a commission or per job or competitive bid basis and not on any other basis." Schweinert's hourly wages for demolition work therefore preclude his other work activities from satisfying this condition. This condition was not satisfied.

¶24     The seventh condition requires that the worker may realize a profit or suffer a loss under contracts to perform work or service. LIRC's analysis that Schweinert could not meet this condition was supported by substantial and credible evidence. Because Schweinert was paid for his demolition services on an hourly basis, he could not suffer a loss. This condition was not satisfied.

¶25     The eighth condition requires that the worker have continuous or recurring business liabilities or obligations. LIRC's analysis that Schweinert had no business liabilities or obligations with regard to the demolition work performed for SK Management is supported by substantial and credible evidence. Schweinert supervised other employees, but that is not an ongoing business liability. Further, SK Management supplied the majority of the tools and equipment required to complete the demolition jobs. This condition was not satisfied.

¶26    The ninth condition that must be satisfied requires that the success or failure of the independent contractor's business is dependant on the relationship of business receipts to expenditures.  LIRC's conclusion that Schweinert had no ability to profit or suffer loss because he was paid hourly for the demolition work is supported by substantial and credible evidence.  This condition was not satisfied.

¶27    Ultimately, SK Management fails to show that Schweinert satisfied all nine conditions under WIS. STAT. § 102.07(8)(b) or that LIRC's decision was not supported by the correct law and substantial evidence.  "Unless all parts of the nine-part test are met, the person is not an independent contractor exempt from the Act."  *See Olivas*, 298 Wis. 2d 640, ¶63.  Therefore, we affirm LIRC's decision that Schweinert was not an independent contractor under the Act.

II.    *Employer-employee relationship*

¶28    The Worker's Compensation Act "does not impose worker's compensation liability on an employer when the employer does not have an employer-employee relationship with an injured person."  *Id.*, ¶84; *see* WIS. STAT. § 102.03(1).   SK Management argues that even if Schweinert is not an independent contractor, he was still King's employer under the meaning of WIS. STAT. § 102.04(1)(b).   Second, SK Management asserts it was not King's employer and, therefore, is not liable for his worker's compensation benefit for his injuries sustained on May 13, 2016.

¶29    SK Management asserts that the record supports that Schweinert qualifies as an "employer" under the Worker's Compensation Act, because an employer is defined as a person "who at any time employs [three] or more employees for services performed in this state," or if employing fewer than three

13

employees, paid wages of $500 or more in a calendar quarter. WIS. STAT. § 102.04(1)(b).[5] However, SK Management misunderstands the effect of Schweinert's status. "An employer who is subject to this chapter is not an employee of another employer for whom the first employer performs work or service in the course of the other employer's trade, business, profession or occupation." WIS. STAT. § 102.07(8m). In other words, because Schweinert is an employee of SK Management—which we established above when we concluded Schweinert worked for SK Management and was not an independent contractor— he cannot be an employer of another person within the performance of those same duties for SK Management. *See* **Whittingham**, 305 Wis. 2d 613, ¶¶9-10. Therefore, whether Schweinert can be considered an employer in another context is not dispositive to the issue of SK Management's status as King's employer and its liability for King's worker's compensation benefits. *See* *id.*

¶30 In the context of the Worker's Compensation Act, an "employee" is defined as "[e]very person in the service of another under any contract of hire, express or implied, all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer[.]" WIS. STAT. § 102.07(4). Therefore, a threshold issue is whether King's employment fell under a contract for hire. "There need not be direct communication between prospective employer and prospective employe[e] to establish the employment relationship. But some authorization, express or implied, is needed to establish a subsequent contract of hire." *Lange v. DILHR*,

---

[5] The Fund argues that Schweinert is not an employer under either definition because he did not pay the wages of the other workers, he merely passed along the wages that were set by SK Management to the workers. We need not determine Schweinert's status in any context other than as it relates to King's work on demolition projects for SK Management.

40 Wis. 2d 618, 624, 162 N.W.2d 645 (1968) (footnote omitted). LIRC's analysis that King worked under a contract for hire is supported by substantial and credible evidence. King was not hired until Olson authorized Schweinert to do so. Olson controlled how much King and Schweinert were paid. Because the record supports that Schweinert was an employee of SK Management, SK Management need not expressly hire King. It is sufficient that SK Management had actual notice of King's work on the demolition work, as shown by Olson speaking directly to King and directing his work on occasion. Therefore, we conclude that a contract for hire was established.

¶31 We now turn to the issue of whether there was an employer-employee relationship between SK Management and King. The *Kress Packing* test is applied to "determin[e] whether a person is an employee under WIS. STAT. § 102.07(4)(a)." *Olivas*, 298 Wis. 2d 640, ¶87. "The principal test for determining whether a Chapter 102 employer-employee relationship exists is whether the alleged employer had the right to control the details of the employee's work." *Labor Ready, Inc. v. LIRC*, 2005 WI App 153, ¶11, 285 Wis. 2d 506, 702 N.W.2d 27. Additional "secondary tests which should be considered are: (1) The direct evidence of the exercise of the right to control; (2) the method of payment of compensation; (3) the furnishing of equipment or tools for the performance of the work; and (4) the right to fire or terminate the relationship." *Kress Packing*, 61 Wis. 2d at 182.

¶32 The record reflects that SK Management, through Olson, had the right to control the details of King's work. Olson generally relayed the details of a demolition project through Schweinert, but Olson also appeared at jobsites and directed the workers himself. Olson discussed work to be performed with King directly at some points. Olson had the final say over whether a demolition project

was completed satisfactorily and would direct Schweinert and other workers to return to the jobsite as necessary to complete the work.

¶33     Addressing the secondary tests, Olson approved Schweinert hiring additional workers, including King, on demolition projects.  SK Management indirectly paid King's hourly wages and Olson set the hourly rate for all of the workers that Schweinert procured for demolition projects.  Olson also had the power to approve merit increases for the workers.  SK Management supplied the equipment necessary to perform the demolition work "including dumpsters, garbage bags, painter's uniforms, dust masks, safety glasses, and gloves."  King did not bring tools to the jobsite.  Finally, if Olson was dissatisfied with a worker's performance, he had the power to terminate workers.

¶34     Under the ***Kress Packing*** test, SK Management and Olson had "sufficient relevant indicia of an employer-employee relationship" between SK Management and King.  *See **Labor Ready, Inc.**,* 285 Wis. 2d 506, ¶17.  LIRC's finding that SK Management and King had an employer-employee relationship is supported by credible and substantial evidence.  Therefore, we affirm LIRC's decision that SK management was liable for King's worker's compensation benefits for his injury on the SK Management jobsite.

## CONCLUSION

¶35     We conclude that SK Management's arguments fail.  Schweinert does not satisfy the nine conditions required to be considered an independent contractor under WIS. STAT. § 102.07(8)(b).  Further, King qualified as an employee under a contract for hire with SK Management.  Under the ***Kress Packing*** test, SK Management had the right to control King's work; therefore, an employer-employee relationship existed between them.  We affirm LIRC's

16

findings that SK Management was liable for worker's compensation benefits for King's injuries on May 13, 2016.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.